UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Crim. No. 08-093 (RJL)** |
| v. | : | |
| | : | |
| JOHN STAGLIANO | : | |
| JOHN STAGLIANO, INC. | : | |
| EVIL ANGEL PRODUCTIONS, INC. | : | |
| Defendants. | : | |

## GOVERNMENT'S TRIAL BRIEF

Now comes the United States of America, by and through its undersigned attorneys, and files this Trial Brief to assist the court on legal issues that may arise during this federal obscenity prosecution.

## STATEMENT OF FACTS

In the course of an FBI investigation of defendants John Stagliano, John Stagliano, Inc. and Evil Angel Productions, Inc. for violations of federal obscenity laws, the FBI learned that Stagliano and his companies produce and distribute hard-core pornography that appears to be obscene under the standard set forth in Miller v. California, 413 U.S. 15 (1973). This material may be purchased on DVD or via download from numerous websites that are registered to Stagliano and his companies including www.evilangel.com and www.evilangeldirect.com. The businesses are operated from a warehouse located at 14141 Covello Street, Van Nuys, California 91405.

On December 6, 2007, FBI Special Agent Daniel Bradley placed an order for two DVDs --- "Milk Nymphos" and "Storm Squirters 2 'Target Practice'" --- by mailing an

order form printed from the website, www.btmmailorder.com, along with a money order in the amount of $57.48, via U.S. Mail, to BTM Mail Order, P.O. Box 19965, Baltimore, Maryland 21211. On December 19, 2007, FBI Special Agent Shawn Matthews retrieved a package from a U.S. Post Office box in Washington, D.C. The package contained the two aforementioned DVDs and was shipped to Washington, D.C. via United Parcel Service. The return address on the package indicated that the movies were shipped from E.A. Productions, 14141 Covello Street #9C, Van Nuys, California 91405. The DVD jackets display the "Evil Angel" logo and list defendant John Stagliano as the Custodian of Records with an address of 14141 Covello Street, 8C, Van Nuys, California 91405. The movies were reviewed and it was determined that they contain allegedly obscene material.

On January 21, 2008, Special Agent Bradley downloaded from the website, www.evilangel.com, a free movie trailer entitled, "Fetish Fanatic Chapter 5." The download took place in the District of Columbia. The trailer is approximately four minutes, forty-five seconds in length and contains allegedly obscene material.

On or about April 8, 2008, a Grand Jury reviewed the two DVDs entitled "Milk Nymphos" and "Storm Squirters 2 'Target Practice,'" and the movie trailer entitled "Fetish Fanatic Chapter 5," and returned an indictment against defendants John Stagliano, John Stagliano, Inc. and Evil Angel Productions, Inc. charging them with violating federal obscenity statutes, including 18 U.S.C. § 1465 (Transportation of Obscene Matters for Sale or Distribution), 18 U.S.C. § 1462 (Using a Common Carrier or Interactive Computer Service to Transport Obscene Matters), 18 U.S.C. § 1466 (Engaging in the Business of Selling or Transferring Obscene Matter); 47 U.S.C. §

223(d) (Sending or Displaying Offense Material to Persons Under 18) and 18 U.S.C. §

1467 (Criminal Forfeiture).

A Motions Hearing is currently scheduled in this case for November 25, 2008.

## LEGAL ANALYSIS

### I.   THE OBSCENITY TEST:  Miller v. California

It is well-established that obscene material is not protected by the First

Amendment.  Miller v. California, 413 U.S. 15, 23 (1973); Roth v. United States, 354

U.S. 476, 485 (1957).  To find the material in this case obscene, the jury must determine

that it satisfies the three-prong test set forth in the seminal Supreme Court case, Miller v.

California.  Under this test the trier of fact must determine:

> 1)   Whether the average person, applying contemporary community standards, would find that the material, taken as a whole, appeals to the prurient interest;
>
> 2)   Whether the average person, applying contemporary community standards, would find that the material depicts or describes sexual conduct in a patently offensive manner; and
>
> 3)   Whether a reasonable person, viewing the material as a whole, would find that the material lacks serious literary, artistic, political or scientific value.

Id. at 24.  If the trier of fact finds that all three prongs are satisfied, the material is deemed

obscene.

### A.   PRONG ONE:  PRURIENT INTEREST

Obscene material is that which "deals with sex in a manner appealing to prurient

interest."  Roth v. United States, 354 U.S. at 487 & 487 n.20.  A prurient interest is a

"shameful or morbid interest[] in nudity, sex or excretion" that "goes substantially

beyond the customary limits of candor in describing or presenting such matters."  Id. at

488. Material appeals to a prurient interest "only if it is in some sense erotic." Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 579 and 579 n.9 (2002) (referring to Webster's Dictionary's definition of erotic as "of, devoted to, or tending to arouse sexual love or desire."). Other descriptive words used to define "prurient" include lewd and lascivious. Roth, 354 U.S. at 487 n.20. See also Ginzburg v. United States, 383 U.S. 463, 466-68 (1966). Material does not appeal to the prurient interest simply because it involves sex or shows nudity. Rather, a prurient interest is "an unhealthy, unwholesome, morbid, degrading, or shameful interest in sex, a leering or longing interest." Polykoff v. Collins, 816 F.2d 1326, 1336 (9th Cir. 1987). See also United States v. Ragsdale, 426 F.3d 765, 780 (5th Cir. 2005) (finding that videos containing "exceedingly graphic depictions" of sexual acts, camera angles and prolonged close up shots were designed to appeal to the prurient interest).

Where material is designed for and primarily disseminated to a clearly defined "deviant group," rather than the public at large, the prurient appeal test is satisfied if the "dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group." Thus, material can have prurient appeal to some even when it repulses others. Mishkin v. New York, 383 U.S. 502, 508 (1966) (finding material obscene involving "deviant sexual practices" such as flagellation and fetishism); see also Ward v. Illinois, 431 U.S. 767, 773 (1977) (finding material obscene involving sado-masochism); United States v. Petrov, 747 F.2d 824, 830-31 (2d Cir. 1984) (finding that material involving bondage and bestiality appeals to the prurient interest of a deviant segment of society). There is no requirement that the average person be sexually aroused by the material. Ripplinger v. Collins, 868 F.2d 1043, 1052 (9th Cir. 1989); United

States v. Guglielmi, 819 F.2d 451, 454-55 (4th Cir. 1987), cert. denied, 484 U.S. 1019
(1988). What matters is that the material is intended to appeal to a prurient interest, not
that it is successful in accomplishing its goal. Ripplinger, 868 F.2d at 1053-54. Also, it
is important to note that the jury does not determine whether the material would appeal to
the prurient interest of the average person. Rather, the proper inquiry is whether the
average person, applying contemporary community standards, would find that the
material appeals to a prurient interest, that is, to someone's prurient interest. Guglielmi,
819 F.2d at 455.

### B.    PRONG TWO:  PATENTLY OFFENSIVE

Miller's second prong requires the jury to determine whether the work depicts or
describes hard-core pornography involving sexual conduct in a "patently offensive"
manner. 413 U.S. at 29. Examples of hard-core sexual conduct include patently
offensive representations or depictions of "ultimate sex acts, normal or perverted, actual
or simulated" and "masturbation, excretory functions and lewd exhibition of genitals."
Id. at 25; see also Huffman v. United States, 502 F.2d 419, 423 (D.C. Cir. 1974) (Miller
requires "hard core sexual conduct" exemplified by "ultimate sexual acts" and "lewd
exhibition of genitals"); Ward v. Illinois, 431 U.S. at 773 (bestiality and sado-masochism
included as examples of sexual conduct). Whether materials are "patently offensive" is
determined by how the average person, applying contemporary community standards,
would view or judge the material. See Pope v. Illinois, 481 U.S. 497, 500 (1987); Smith
v. United States, 431 U.S. 291, 301-02 (1977); United States v. Battista, 646 F.2d 237,
245 (6th Cir. 1981), cert. denied, 454 U.S. 1046 (1981); United States v. Various Articles
of Obscene Merchandise, Schedule No. 1769, 600 F.2d 394, 406 (2d Cir. 1979).

Patently offensive materials have been described as "so offensive on their face as to affront current community standards of decency," Manual Enterprises v. Day, 370 U.S. 478, 482 (1962), or a "deviation from society's standards of decency." Jacobellis v. Ohio, 378 U.S. 184, 192 (1964). Patent offensiveness with respect to sexual materials has also been defined as that which relates to "nonconformance with accepted standards of morality." See Federal Communications Commission v. Pacifica Foundation, 438 U.S. 726, 740 (1978). The term "patently" is defined as "clearly," "obviously" and "plainly." The term "offensive" is defined as "giving painful or unpleasant sensations" or as "causing displeasure or resentment" and is likened to terms such as "nauseous," "obnoxious," "revolting," and "affronting." In this context, the material can be determined "patently offensive" if it affronts current community standards of decency. Hoover v. Byrd, 801 F.2d 740, 741 (5th Cir. 1986). Material is "patently offensive" because it affronts contemporary community standards relating to the description or representation of sexual matters. Marks v. United States, 430 U.S. 188, 191 n.4 (1977); Hamling v. United States, 418 U.S. 87, 99 n. 8 (1974).

Unlike the "prurient interest" prong of the Miller test, the determination of whether material is "patently offensive" is not based on the work "taken as a whole." Instead, it is the character or nature of the sexual conduct portrayed in the material that can warrant the finding of obscenity based upon its patent offensiveness. In other words, it is not the type of sexual conduct, but rather how it is portrayed, which will render the material obscene. Miller, 413 U.S. at 24. In Penthouse International, Ltd. v. McAuliffe, 610 F.2d 1353, 1366 (5th Cir. 1980), the Fifth Circuit found that certain articles contained in the magazines, "Penthouse" and "Oui," described hard-core sexual conduct in such a

manner "that exceed[ed] the customary limits of good taste usually found in literature." The court held that the works were obscene because "[t]he explicitness and amount of detail coupled with the offensive language [that was] used to describe the actual sexual experiences or sexual fantasies were presented in such a manner that was patently offensive." Id.

## C.  PRONG THREE: LACK OF SERIOUS LITERARY, ARTISTIC, POLITICAL, OR SCIENTIFIC VALUE

Obscene material, by definition, lacks any serious literary, artistic, political, or scientific value. Paris Adult Theatre I v. Slaton, 413 U.S. 49, 67 (1973). Conversely, serious literary, artistic, political, or scientific value can redeem a prurient work that contains patently offensive depictions. Miller, 413 U.S. at 26. The jury must step into the shoes of the "reasonable person" and consider the material as a whole. Pope v. Illinois, 481 U.S. at 500-01. The third prong of the Miller test was designed to protect "genuinely serious literary, artistic, political, or scientific expression." Miller, 413 U.S. at 22-23. To have "serious value," a work must have a significant legitimate purpose. Penthouse International, Ltd. v. Webb, 594 F. Supp. 1186, 1198 (N.D. Ga. 1984).

Obscene material cannot be saved merely because it is couched in legitimate material, nor will the sporadic use of legitimate material save an otherwise obscene expression. As the Court noted in Miller, "[a] quotation from Voltaire in the flyleaf of a book will not constitutionally redeem an otherwise obscene publication." 413 U.S. at 25 n.7; see also United States v. Merrill, 746 F.2d 458, 464 (9th Cir. 1984) (pornography attached to a "political" letter still declared obscene), cert. denied, 469 U.S. 1165 (1985); Penthouse International, Ltd. v. McAuliffe, 610 F.2d at 1368 (pornography inserted between pages of the Bible insufficient to save the work from being found obscene);

Flying Eagle Publication, Inc. v. United States, 285 F.2d 307, 308 (1st Cir. 1961) (bucolic account of a Sunday School picnic did not keep sexually graphic pictures of a Roman orgy from being declared obscene).

The mere existence of a plot or story line will not give a work serious literary value. Kaplan v. California, 413 U.S. 115, 116-17 (1973); see also United States v. Four (4) Books, 289 F. Supp. 972 (C.D. Cal. 1968). Further, "social importance" such as sexual liberation or sexual instruction is not sufficient to avoid an obscenity conviction. Buckley v. New York, 418 U.S. 944 (1974); see also United States v. Schein, 31 F.3d 135, 137 (3d Cir. 1994) (videotapes not redeemed simply because performers wear condoms and viewers reminded from time to time to have "safe sex"); United States v. One Reel of Film, 481 F.2d 206, 210 (1st Cir. 1973) (rejecting argument that pornography itself, because of its liberating impact, has for that reason alone serious, literary, artistic, political or scientific value).

In addition, material that may be useful and have scientific value to physicians, psychologists, or sociologists takes on a different light when marketed and distributed to an audience outside these professional groups. See Miller, 413 U.S. at 26; Ginzburg, 383 U.S. at 472 (deliberate sale of sexually provocative book outside of intended professional field rendered it obscene). While the First Amendment will protect works that have serious value, it will not protect the public portrayal of hardcore sexual conduct for its own sake or for commercial gain. Miller, 413 U.S. at 34-35. Moreover, even one obscene item contained in a work will be sufficient to render it obscene if, "taken as a whole," the work lacks serious value (and, assuming the other two prongs of Miller are met). McAuliffe, 610 F.2d at 1368.

### D.    **RELEVANT TERMS FOR OBSCENITY CASES**

#### 1.    **"Average Person" Defined**

The first two prongs of the <u>Miller</u> test involving "prurient appeal" and "patent offensiveness" require the trier of fact to judge obscenity by its impact on the average person in the community, rather than the most prudish or the most tolerant. <u>Pinkus v. United States</u>, 436 U.S. 293, 300 (1978); <u>Smith v. United States</u>, 431 U.S. at 304. The term "average person" does not involve a specific number of people, the majority, a few or some, but it is a term "connoting a composite or syntheses of the community," <u>United States v. Treatman</u>, 524 F.2d 320, 323 (8th Cir. 1975), and it is a "flexible concept that requires taking into account such variables as the characteristics of the community, the differing attitudes within it, the extent to which persons reveal their true opinions, and the nature of the 'hard core' material under attack." <u>United States v. Various Articles of Obscene Merchandise, Schedule No. 2102</u>, 709 F.2d 132, 135-36 (2d Cir. 1983). Because jurors must consider the allegedly obscene material from the viewpoint of the average person, they must be instructed that they are not to base their decision on their own personal opinions or subjective reactions. <u>Miller</u>, 413 U.S. at 33; <u>Smith</u>, 431 U.S. at 305.

#### 2.    **"Contemporary Community Standards" Defined**

The Supreme Court adopted the concept of "contemporary community standards" because it determined that use of a national standard for obscenity would be "an exercise in futility" given the size and diversity of the United States. <u>Miller</u>, 413 U.S. at 30, 33-34. Thus, juries are required to judge the allegedly obscene material based upon what is accepted and decent in their own local communities. <u>Id.</u> at 30-31. They are to

"determine the collective view of the community, as best as it can be done." <u>Pinkus</u>, 436 U.S. at 300-01.    As the Court in <u>Miller</u> observed, "[i]t is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City." 413 U.S. at 32.

Contemporary community standards are set by what the adult community accepts, not what a community will tolerate, put up with, permit or allow.  <u>United States v. Pryba</u>, 900 F.2d 748, 758 (4th Cir. 1990).  The Court in <u>Pryba</u> explained, "[t]o consider community toleration as synonymous with what a community will put up with skews the test of obscenity and invites one to consider deviations from community standards, because a community can be said to put up with a number of disagreeable circumstances that it cannot stop." <u>Id.</u> at 759; <u>accord</u> <u>Hoover v. Byrd</u>, 801 F.2d at 741-42 (to incorporate a requirement of "tolerance" within the definition of community standards "turns the notion of standards upside down"); <u>United States v. Easley</u>, 927 F.2d 1442, 1446-47 (8th Cir. 1991) (rejecting argument that tolerance should be used); <u>Battista</u>, 646 F.2d at 245 (rejecting argument that obscenity depends upon what the community is willing to tolerate); <u>cf</u>. <u>United States v. Petrov</u>, 747 F.2d 824, 831  (2d Cir. 1984) ("acceptance" and "tolerance" used interchangeably).  Thus, contemporary community standards are set by what is in fact accepted by the community, not what the community will merely tolerate.

The government is not required to present evidence of "contemporary community standards" in an obscenity prosecution, although such evidence may be admissible.[1]

---

[1] It is possible that a judge sitting in the place of a jury might consider himself or

United States v. Merrill, 746 F.2d at 464 (trier of fact is assumed to be inherently familiar with and capable of applying views of the community); Luke Records, Inc. v. Navarro, 960 F.2d 134, 137 (11th Cir.) (law does not require government to introduce evidence as to community standards), cert. denied, 506 U.S. 1022 (1992). Rather, members of the jury may properly rely on their own experience and judgment to determine their own applicable community standards. Ragsdale, 426 F.3d at 773 (no requirement that government prove that a jury is qualified to determine local community standards). Nor is it proper to voir dire prospective jurors about their understanding of their community standards prior to commencement of the trial. Smith, 431 U.S. at 308; United States v. Thomas, 613 F.2d 787, 794 (10th Cir.), cert. denied, 449 U.S. 888 (1980).

Whether the material is obscene is determined by the standards of the community where the trial takes place, that is, where venue lies. United States v. Thomas, 74 F.3d 701, 709 (6th Cir.) (issues regarding applicable community standards are tied to venue), cert. denied, 519 U.S. 820 (1996); United States v. Peraino, 645 F.2d 548, 551 (6th Cir.) (community standards come from the trial's venue; which may be any "district from, through, or into which the allegedly obscene material moves"), cert. denied, 454 U.S. 1046 (1981); United States v. Bagnell, 679 F.2d 826, 832 (11th Cir. 1982) (prosecutions may be brought in the district of dispatch or the district of receipt), cert. denied, 460 U.S. 1047 (1983). Federal obscenity statutes are constitutional even though distributors of allegedly obscene material "may be subjected to varying community standards in the various federal judicial districts into which they transmit materials." Ashcroft, 535 U.S.

---

herself unable to render a judgment in an obscenity case due to a lack of familiarity with community standards. United States v. 2,200 Paper Back Books, 565 F.2d 566, 570-71 (9th Cir. 1977).

at 581.  The law contemplates that the community standards for adjudging material obscene may vary from location to location.  Miller, 413 U.S. at 26 n.9.  Distributors of obscene communications bear the burden of abiding by the law even if its audience is comprised of different communities with different local standards.  Sable Communications, 492 U.S. at 125.  This principle controls even if the defendant did not know the exact destination of the obscene materials he placed into the stream of interstate commerce.  Thomas, 74 F.3d at 709.

The advent of the Internet has not altered the viability of the "community standards" test that must be used to determine whether material is obscene.  In 1994, Congress adopted the Child Online Protection Act ("COPA") prohibiting the distribution of material that is "harmful to minors" over the Internet.  COPA defined the "harmful to minors" material restricted by the Act in a manner parallel to the Miller definition of obscenity.

In Ashcroft v. American Civil Liberties Union, 535 U.S. 564 (2002), the plaintiff challenged COPA claiming that its use of the "community standards" test to identify Internet material that is 'harmful to minors' violated the First Amendment.  In the case below, the Third Circuit held that it did, concluding that "community standards" jurisprudence "has no applicability to the Internet and the Web" because "Web publishers are currently without the ability to control the geographic scope of the recipients of their communications."  American Civil Liberties Union v. Reno, 217 F.2d 162, 180 (3d Cir. 2000).  The court reasoned that because juries were free to apply different community standards in different parts of the county, yet Web publishers could not control access to their sites on a geographic basis, COPA's "community standards" test forced all Web

publishers to abide by the standards of the least tolerant, or "most puritan" community. The court said the Act was therefore unconstitutionally overbroad, because it imposed "an overreaching burden and restriction on constitutionally protected speech." Id. at 177.

The Supreme Court reversed. After surveying the Miller line of cases, including Hamling v. United States, 418 U.S. 87 (1974) and Sable Communications of Cal., Inc. v. Federal Communications Commission, 492 U.S. 115 (1989), the Court stated, "we do not believe that the [Internet's] 'unique characteristics' justify adopting a different approach than that set forth in Hamling and Sable." 535 U.S. at 583. The Court noted:

> If a publisher chooses to send its material into a particular community, this Court's jurisprudence teaches that it is the publisher's responsibility to abide by that community's standards. The publisher's burden does not change simply because it decides to distribute its material to every community in the Nation. . . . If a publisher wishes for its material to be judged only by the standards of particular communities, then it need only take the simple step of utilizing a medium that enables it to target the release of its material into those communities.

Id.

Ultimately, the Supreme Court ruled that "COPA's reliance on community standards to identify 'material that is harmful to minors' does not *by itself* render the statute substantially overbroad for purposes of the *First Amendment*." Id. at 585 (emphasis in original). The effect of the ruling in Ashcroft is to validate the use of the "community standards" test in cases, such as the present one, charging violation of federal obscenity statutes by means of interactive computer services, including the Internet.

### 3.    "Community" Defined

Under the Miller test, the term "community" includes all adults, including the

most sensitive or susceptible members, but does not include children. Pinkus, 436 U.S. at 298. Federal courts have upheld communities defined by relevant state, county, and federal judicial district boundaries; however, no specific geographic community need be identified. See Ashcroft, 535 U.S. at 576; United States v. Danley, 523 F.2d 369, 370 (9th Cir. 1975), cert. denied, 424 U.S. 929 (1976). The jury should be left to inherently recognize "community" in terms of the region and vicinage from which they come. See United States v. Dachsteiner, 518 F.2d 20, 22 (9th Cir.), cert. denied, 421 U.S. 954 (1975); Jenkins v. Georgia, 418 U.S. 153, 157 (1974) (constitutionally permissible to permit juries to rely on their own understanding of what constitutes their community); Smith, 431 U.S. at 300 n.6 (community as a whole should be the judge of obscenity, not a small, atypical segment of the community).

### 4.    "Reasonable Person" Defined

Miller's third prong requires the jury to determine whether the hypothetical reasonable person would find serious literary, artistic, political, or scientific value in the material, taken as a whole. Pope v. Illinois, 481 U.S. at 500-01. Use of the reasonable person standard in obscenity cases is akin to use of the reasonable man standard in tort suits. Id. at 501 n.3. The question of whether allegedly obscene work has serious value is not determined by reference to community standards. Id. at 500; Smith, 431 U.S. 301. In deciding how a reasonable person would judge the value of the work, the jury can and must use its collective knowledge of what a presumably universal but fictional person of reasonableness would think and how such a world-wise person would assess the inherent value of the work. Hamling, 418 U.S. at 104 (comparing "average person" for community standard test with "reasonable person" for serious value test).

## II.    EVIDENTIARY ISSUES IN AN OBSCENITY CASE

### A.    EVIDENCE OF "COMPARABLE" MATERIALS IS GENERALLY INADMISSIBLE

Defendants in obscenity prosecutions are entitled to the "opportunity to adduce, relevant, competent evidence bearing on the issues to be tried." Hamling, 418 U.S. at 125. The availability of similar materials in the community, however, does not make those materials automatically admissible to prove the non-obscenity of the charged materials. Id. at 126; Ragsdale, 426 F.3d at 776. The "[m]ere availability of similar material by itself means nothing more than that other persons are engaged in similar activities." United States v. Manarite, 448 F.2d 583, 593 (2d Cir.), cert. denied, 404 U.S. 947 (1971). Therefore, evidence that similar materials are for sale in local retail stores and via the Internet is generally not admissible. The danger in admitting allegedly comparable materials in an obscenity trial is that this evidence will "create more confusion than enlightenment in the minds of the jury." Hamling, 418 U.S. at 127.

Under certain circumstances, however, the defense may offer comparable evidence for admission at trial. The commonly accepted foundational requirement for the admission of comparable evidence in obscenity cases is the Womack test, named after the two cases in which the test was articulated. See Womack v. United States, 294 F.2d 204 (D.C. Cir.), cert. denied, 365 U.S. 859 (1961) (Womack I); United States v. Womack, 509 F.2d 368 (D.C. Cir. 1972), cert. denied, 422 U.S. 1022 (1975) (Womack II). Under the Womack test, the defendant must show that the allegedly comparable material (1) is similar to the material at issue and (2) enjoys a reasonable degree of community acceptance. Womack II, 509 F.2d at 377; Womack I, 294 F.2d at 206. The burden of proof is on the defendant, and a failure to meet both parts of the test -- similarity and

actual reasonable acceptance -- will result in exclusion of the proffered evidence. See Womack II, 509 F.2d at 377-78; Hamling, 418 U.S. at 125-27.

The critical determination under the Womack test is usually whether the comparable material is truly accepted by the community. See Battista, 646 F.2d at 245; see also Womack II, 509 F.2d at 380. To prove that comparable material is accepted, the defendant must show more than simply the ability to purchase or rent other similar material. Rather, the defendant must establish that the community has knowingly accepted the material. The mere fact that hard-core pornographic material exists within a particular community does not mean that it has been accepted. FCC v. Pacifica Foundation, 438 U.S. at 740 n.15. The availability must be in "conformance with accepted standards of morality," and not merely in existence or ignored. Hamling, 418 U.S. at 125-27; see also Pryba, 678 F. Supp. 1225, 1232-35 (E.D. Va. 1988) (defense report containing interviews with owners, employees and customers of adult video stores were not admissible where report only went to availability of materials in the community and not acceptance by the community.) Admissible comparable evidence must be truly be similar in nature and must be knowingly accepted by the community as a whole, not simply accepted by extreme persons who seek it out or are apathetic to its presence.

B.    **SCIENTER IS ESTABLISHED BY A SHOWING THAT THE DEFENDANT HAD A GENERAL KNOWLEDGE OR AWARENESS OF THE MATERIAL**

In obscenity cases, the government need only establish that a defendant had a general knowledge or awareness of the overall character of the sexually explicit content of the charged material. Hamling, 418 U.S. at 123; see also Mishkin v. New York, 383 U.S. at 510 (element of scienter is satisfied if it is shown that the defendant was in "some

manner aware of the character of the material"); <u>Rosen v. United States</u>, 161 U.S. 29, 41 (1896) (knowledge of material's legal status irrelevant; it must be shown that the individual had knowledge or notice of the material's contents). The prosecution is not required to prove that the defendant knew the precise contents of the material, or even that a defendant has personally viewed the material. <u>Cf</u>. <u>United States v. Brown</u>, 862 F.2d 1033, 1036 (3d Cir. 1988) (defendant ordered obscene tape depicting child pornography but received a different tape in error).

### C.    EVIDENCE OF PANDERING IS ADMISSIBLE

Evidence of how obscene materials are pandered or exploited for commercial purposes is relevant "in determining the ultimate question of obscenity." <u>Ginzburg</u>, 383 U.S. at 470; <u>see</u> <u>also</u> <u>Hamling</u>, 418 U.S. at 130 (jury can consider the manner of distribution and circumstances of production, sale, advertising and editorial intent); <u>Splawn v. California</u>, 431 U.S. 595, 598 (1977). Thus, the government is allowed to present evidence to the jury of the circumstances and methods the defendant used to create, market, promote or disseminate the obscene materials. <u>Pinkus</u>, 436 U.S. at 303-04 (approving pandering instructions). The defendant need not be charged with pandering in order for evidence of pandering to be introduced in an obscenity prosecution. <u>United States v. Dost</u>, 575 F.2d 1303, 1305 (10th Cir.), <u>cert. denied</u>, 439 U.S. 916 (1978) (holding that the jury could take into account the setting in which the photographs and brochures were presented).

### D.    EXPERT TESTIMONY IS NOT REQUIRED IN OBSCENITY CASES

As a general rule, expert testimony is not required in obscenity cases because the films are "the best evidence of what they represent." <u>Paris Adult Theatre I</u>, 413 U.S. at

56. Indeed, hard core pornography can and does speak for itself. United States v. Wild, 422 F.2d 34, 36 (2d Cir. 1969), cert. denied, 402 U.S. 986 (1971). And a jury generally can determine whether allegedly pornographic material is obscene simply by viewing it. Pinkus, 436 U.S. at 302; Ginzburg, 383 U.S. at 465; cf. Jacobellis v. Ohio, 378 U.S. at 197 (Stewart, J., concurring) ("I know it when I see it…"). Consequently, there is no constitutional need for expert testimony once the allegedly obscene material is placed into evidence. Kaplan v. California, 413 U.S. 115, 121 (1973) (citing Paris Adult Theatre, 413 U.S. at 56)).

The Supreme Court has recognized, however, that expert testimony may be required in an extreme case where materials are "directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the prurient interest." Paris Adult Theatre, 413 U.S. at 56 n.6; see also Mishkin, 383 U.S. at 508-10; Ragsdale, 426 F.2d at 774 (expert testimony may be necessary only where materials are so abnormal that they may not be recognized as lascivious or erotic to the average juror). Also, while expert testimony is not required in obscenity cases, it is permissible. Hamling, 418 U.S. at 108; see also United States v. Cross, 928 F.2d 1030, 1049-51 (11th Cir.), cert. denied, 502 U.S. 985 (1991) (prosecution expert allowed to testify about the sexual appeal of alleged obscene materials to pedophiles); but see United States v. Arvin, 900 F.2d 1385 (9th Cir. 1990), cert. denied, 498 U.S. 1025 (1991) (expert testimony not admissible in regards to whether subject photos were "lascivious" under statute prohibiting such conduct); St. John v. State of N.C. Parole Com'n, 764 F. Supp. 403 (W.D.N.C. 1991), aff'd, 953 F.2d 639 (4th Cir. 1992), cert. denied, 506 U.S. 825 (1992) (excluding defense expert's surveys and

comparisons as to community standards as they were inappropriate, i.e., irrelevant and not helpful to the jury); United States v. Pryba, 678 F. Supp. at 1226-35 (testimony excluded relating to availability of other pornography and survey of alleged "expert"). The trial court enjoys wide discretion in its determination to admit and exclude evidence, including expert testimony in obscenity cases. Hamling 418 U.S. at 108.

### E.  "CONSENTING ADULTS" EVIDENCE IS INADMISSIBLE

It is well-established that it is not a defense to the crime of distributing obscene material that the material was bought, ordered, viewed, or used by "consenting adults." Paris Adult Theatre, 413 U.S. at 57.  Federal obscenity laws prohibit the interstate transportation of obscene material to any person, whether that person is an adult or child, even where it may be feasible to implement safeguards against exposure to juveniles and to passersby. Id., 413 U.S. at 57-58; United States v. Schein, 31 F.3d at 138 (material is no less obscene because it is viewed only by consenting adults).  Likewise, it is irrelevant whether the charged materials were made by consenting adult performers.  Ragsdale, 426 F.3d at 772 ("the question of whether the videos at issue are of consensual or non-consensual sexual activities is irrelevant to the question of whether the materials are obscene" under Miller).

### F.  RIGHT TO PRIVACY DOES NOT PROTECT OBSCENITY

In Stanley v. Georgia, 394 U.S. 557 (1969), the Supreme Court made clear that the "mere private possession of obscene material" in the home cannot be a crime.  The right to possess obscene material in the privacy of one's home, however, does not provide a "correlative right" to receive, to transport or to distribute obscenity.  United States v. Reidel, 402 U.S. 351, 356 (1971); see also United States v. 12 200-Ft. Reels of Super

8mm Film, 413 U.S. 123, 128 (1973).  Further, there is no constitutional right to use common carriers in interstate commerce for the delivery of obscene material to the home. United States v. Orito, 413 U.S. 139, 141 (1973) (Supreme Court rejected idea that a zone of constitutional protected privacy follows obscene material when it is moved outside the home area protected by Stanley).  Rather, the Court held that the Constitution does not forbid "comprehensive federal regulation of interstate transportation of obscene material merely because such transport may be by private carriage, or because the material is intended for the private use of the transporter." Id. at 143.  Simply because the possession and viewing of obscene materials is often done in private does not obviate the crime committed by the distributor.

## G.  THE INTERNET IS A CHANNEL AND INSTRUMENTALITY OF INTERSTATE COMMERCE

It is well-settled that Congress "may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature." Orito, 413 U.S. at 144 (quoting North American Co. v. SEC, 327 U.S. 686, 705 (1946)).  The Internet is an instrumentality and channel of interstate commerce and Congress has the power to regulate it to "prohibit its use for harmful or immoral purposes." United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004), cert. denied, 545 U.S. 1135 (2005).  Because the Internet is both an instrumentality and channel of interstate commerce, federal statutes regulating the distribution of obscenity apply. United States v. Extreme Associates, Inc., 451 F.3d 150, 161 (3d Cir. 2005), cert. denied, 547 U.S. 1143 (2006).  Thus, transmitting and downloading obscene images by means of the Internet constitutes transportation in interstate commerce and is a violation

20

of federal obscenity laws.  See United States v. MacEwan, 445 F.3d 237, 245 (3d Cir.

2006) ("[I]t is difficult to find an act more intertwined with the use of the channels and

instrumentalities of interstate commerce than that of downloading an image from the

Internet."); United States v. Runyan, 290 F.3d 223, 239 (5th Cir.) (same), cert. denied,

537 U.S. 888 (2002).

Respectfully submitted,


_____

JEFFREY TAYLOR
United States Attorney for the
                    District of Columbia



_____

BRENT WARD
Director, Obscenity Prosecution
                    Task Force

By:

_____

PAMELA S. SATTERFIELD
Trial Attorney
United States Department of Justice
Criminal Division
1301 New York Avenue, N.W.
Suite 500
Washington, D.C. 20530
(202) 353-2485
Pamela.Satterfield@usdoj.gov

## CERTIFICATE OF SERVICE

I, Pamela Satterfield, Trial Attorney with the United States Department of Justice, Criminal Division, hereby certify that the foregoing Trial Brief was filed on July 30, 2008, by CM/ECF which will send electronic copies to counsel for the defendants, Robert Corn-Revere, Esquire, Davis Wright Tremaine, LLP, 1919 Pennsylvania Avenue, N.W., Suite 200, Washington, D.C. 20006; H. Louis Sirkin, Esquire, and Jennifer Kinsley, Esquire, Sirkin, Pinales & Schwartz, LLP, 105 West Fourth Street, Suite 920, Cincinnati, OH 45202; Paul Cambria, Jr., Esquire, and Roger Wilcox, Esquire, Lipsitz Green Scime Cambria, LLP, 42 Delaware Avenue, Suite 120, Buffalo, NY 14202; and Allan Gelbard, Esquire, 15760 Ventura Boulevard, Suite 801, Encino, CA 91436.

Pamela S. Satterfield
Trial Attorney
United States Department of Justice
Criminal Division
1301 New York Avenue, N.W., Suite 500
Washington, D.C. 20530
(202) 353-2485
Pamela.satterfield@usdoj.gov