ALLAN B. GELBARD, ESQ.
THE LAW OFFICES OF ALLAN B. GELBARD
15760 Ventura Boulevard, Suite 801
Encino, CA 91436
Tel:(818)386-9200
Fax:(818)386-9289
Pro Hac Vice - CA Bar # 184971

Attorney for Defendant
John Stagliano

# UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN STAGLIANO, JOHN STAGLIANO, INC., and EVIL ANGEL PRODUCTIONS, INC.,<br><br>Defendants<br><br>John Stagliano's business address is:<br>14141 Covello St., Unit 8C<br>Van Nuys, CA 91405 | **CASE NO:Criminal 08-093 (JRL)**<br><br>**DEFENDANT JOHN STAGLIANO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF:**<br><br>**I   MOTION TO DISMISS ALL COUNTS OF THE INDICTMENT**<br><br>**II  MOTION FOR OPEN PUBLIC TRIAL**<br><br>**III MOTION TO JOIN ALL OTHER DEFENDANTS' MOTIONS**<br><br>(Oral Argument Requested)<br><br>[Proposed] ORDER Filed Herewith. |

Defendant John Stagliano, through counsel of record Allan B. Gelbard, Esq., hereby respectfully moves this Court to dismiss the indictment against him on the grounds that:

1)    The federal obscenity statutes under which he is charged violate his, and his customers' rights protected by the Substantive Due Process guarantees of the Fifth and Fourteenth Amendments.

2)    47 U.S.C. § 223(d) is unconstitutionally vague as applied to Internet communications.

3)    The Prosecution of Obscenity in the District of Columbia Violates the First Amendment rights of Defendant and all similarly situated erotic artists to obtain federal copyright protection for their creative works based on a impermissible content based determination.

Further, Defendant hereby moves the Court for an open and public trial as guaranteed by the First and Sixth Amendments to the United States Constitution.

Further, Defendant hereby moves the Court that he be permitted to join all other applicable pre-trial motions brought by his Co-Defendants.

This motion is based on the attached Memorandum of Points and Authorities, the Exhibits and Declarations attached hereto, the arguments of counsel at the hearing on the motion, and upon such additional matters as the Court deems appropriate.

Respectfully submitted this 31st day of July, 2008

 s/Allan B. Gelbard, Esq./
Allan B. Gelbard, Esq.
THE LAW OFFICES OF ALLAN B. GELBARD
15760 Ventura Blvd., Suite 801
Encino, CA 91436
Tel: (818)386-9200
Fax: (818)386-9289
Pro Hac Vice - CA Bar # 184971
Attorney for Defendant John Stagliano

 s/ Robert Corn-Revere/
Robert Corn-Revere
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW Suite 200
Washington, DC 20006
Tel: (202) 973-4200
Fax: (202) 973-4499
D.C. Bar # 375415
Local Counsel for Defendant John Stagliano

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1

## **<u>TABLE OF CONTENTS</u>**

2

3    NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5        I    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6        II   THE HISTORY OF THE OBSCENITY DOCTRINE . . . . . . . . . . . . . . . . . . 4

7        III  THE EVOLUTION OF SEXUAL PRIVACY . . . . . . . . . . . . . . . . . . . . . 11

8            A.    The Griswold - Carey Line of Contraceptive Cases . . . . . . . . . . . . . . 12

9            B.    The Bowers - Lawrence Sexual Privacy Line of Cases . . . . . . . . . . 13

10       IV   THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS . . . . . . . . . . 15
             PROTECT THE RIGHT TO OFFER SEXUALLY EXPLICIT
11           SPEECH TO WILLING ADULT RECIPIENTS

12       V    THE OBSCENITY DOCTRINE IS UNCONSTITUTIONALLY . . . . . . . . 18
             VAGUE AS APPLIED TO INTERNET COMMUNICATIONS

13       VI   LOCAL COMMUNITY STANDARDS TESTS ARE IN . . . . . . . . . . . . . 22
             APPLICABLE TO INTERNET COMMUNICATIONS
14

15       VII  PROSECUTION OF OBSCENITY IN THE DISTRICT OF . . . . . . . . . . . 24
             COLUMBIA IMPERMISSIBLY CHILLS THE RIGHT TO
16           PROTECT EXPRESSIVE WORKS UNDER COPYRIGHT

17       VIII DEFENDANT JOHN STAGLIANO IS ENTITLED TO A . . . . . . . . . . . . 26
             PUBLIC TRIAL UNDER THE FIRST AND SIXTH
             AMENDMENTS TO THE UNITED STATES CONSTITUTION
18

19           A.    The Sixth Amendment Guarantee of a Public Trial . . . . . . . . . . . . . 27

20           B.    The First Amendment Guarantee of a Public Trial . . . . . . . . . . . . . 28

21       IX   MOTION TO JOIN OTHER DEFENSE MOTIONS . . . . . . . . . . . . . . . . 30

22       X    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

23   DECLARATION OF ALLAN B. GELBARD, ESQ., RE EXHIBITS . . . . . . . . . . . . . . 33

24   EXHIBIT 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

25   EXHIBIT 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

26   EXHIBIT 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

27

28

ALLAN B. GELBARD, ESQ.,
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 · Fax (818)386-9289

## MEMORANDUM OF POINTS AND AUTHORITIES

## I

## INTRODUCTION

John Stagliano has been indicted under 18 U.S.C. §§ 1462, 1465, 1466, 47 U.S.C. § 223(d) and 18 U.S.C. § 2. Mr. Stagliano and the co-defendant corporations John Stagliano, Inc. ("JSI") and Evil Angel® Productions, Inc. ("Evil Angel®") are domiciled in Los Angeles, California. All charges are based on the alleged "obscenity" of the works in issue.

The works alleged to be obscene are two (2) DVDs - <u>Jay Sin's Milk Nymphos</u> and <u>Joey Silvera's Storm Squirters, II</u> - and a trailer for <u>Belladonna's Fetish Fanatics 5</u> which is a small portion of the Evil Angel® (www.evilangel.com) internet website. All the works charged were lawfully produced, and contain depictions of various sexual acts, all of which are, themselves, lawful. Each performer was a willing participant and was over the age of eighteen when filmed.[1] The videos are not for public display and are intended only for private, non-commercial viewing by consenting adults who wish to view such materials in the privacy of their own homes. Each video includes a written copyright warning noting that commercial use (such as public display) is prohibited. The home page of the Evil Angel website contains no sexually explicit images whatsoever and includes a prominent notice that the contents are "of a sexually oriented and frankly erotic nature" and that the site "was designed to be used and viewed solely by people who are at least 18 years of age."[2] (Exhibit 1)

---

[1]  The records required to prove that all performers were at least 18 years of age when the various productions were produced are required to be maintained pursuant to 18 U.S.C § 2257. Defendants are in possession of all such records.

[2]  The language on the home page states: "This site was designed to be used and viewed solely by people who are at least 18 years of age, or who are otherwise legally considered to be of adult age depending on the community in which they live, who wish to access materials that are visually graphic in nature including portrayals of nudity and sexual acts. If you are not legally considered to be of adult age as determined by the community in which you live, or find such material offensive in nature, or simply do not wish to be exposed to such material <u>YOU MUST LEAVE NOW BY CLICKING HERE</u>." By clicking on "HERE", a viewer is taken to www.ijjo.com which is a general interest website devoid of sexually explicit content.

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

1    Initially, all charges based on the downloading of the Internet trailer from the Evil Angel

2    website are constitutionally impermissible as any finding of obscenity requires the work(s) must

3    be "taken as a whole" and evaluated based on "contemporary community standards." Both terms

4    have been found unconstitutionally vague as applied to Internet speech. Additionally, their

5    cumulative effect, in combination with the government's ability to "forum shop" the prosecution,

6    further exacerbates the due process violation.

7    Further, based on recent Supreme Court and Appellate Court decisions, the federal

8    obscenity statutes have been fatally undermined as applied to distribution of sexually explicit

9    materials by and between consenting adults for private viewing. The central rationale relied upon

10   by the Supreme Court in its initial assumption that sexually expressive speech could be prohibited

11   - the regulation of majoritarian morality - has been expressly disapproved. There is no valid basis

12   for restricting the distribution of sexually explicit materials between consenting adults sufficient

13   to constitute a legitimate, let alone compelling government interest.

14   As the right to engage in the sexual acts portrayed in the indicted works has gained

15   constitutional protection, the government's attempt to restrict accurate depictions thereof, which

16   are offered only to consenting adults wishing to view them in private, cannot survive either strict

17   scrutiny, or rational basis scrutiny and must be held unconstitutional.

18   This prosecution violates John Stagliano's rights under both the Speech and Establishment

19   clauses of the First Amendment and the Substantive Due Process guarantees of the Fifth and

20   Fourteenth Amendments. Additionally, John Stagliano's customers' rights to receive and view

21   these works in the privacy of their homes, guaranteed under the First Amendment and by

22   Substantive Due Process, are also violated by the government's prosecution of this case and Mr.

23   Stagliano has standing to assert and protect their rights as well as his own.

24   Additionally, the prosecution of obscenity in the District of Columbia impermissibly chills

25   the rights of erotic artists to obtain federal copyright protection and must be held unconstitutional.

26   Should trial be necessary, John Stagliano is entitled a fair and open trial based on the

27   guarantees of the First and Sixth Amendments to the United States Constitution.

28

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

## II

## THE HISTORY OF THE OBSCENITY DOCTRINE

The "intractable obscenity problem" (*Interstate Circuit, Inc. v. Dallas*, 390 U.S. 676, 704 (1968)), has a long and tortured history.  The first time the Supreme Court addressed the issue directly was in 1957[3].  In *Roth v. United States*, 354 U.S. 476 (1957) the Supreme Court upheld the conviction of a mass mailers of <u>unsolicited</u> explicit materials ruling five to four that "obscenity is not within the area of constitutionally protected speech or press." *Id* at 485.[4]  The *Roth* majority string-sited numerous cases under which it "assumed" that obscenity was unprotected[5] (*Id*. at 481), however a review of the cases demonstrates that each was either based on a finding that government regulation based on majoritarian morality was permissible[6], or that

---

[3]    Obviously, the *Roth* Court could never have anticipated the extent to which far more explicit materials would become readily available through then non-existent and non-imaginable technologies such as the VCR, DVDs, Satellite and Cable Television, closed circuit hotel channels, and the Internet.

[4]    Both defendants in *Roth* had mass-mailed unsolicited advertisements for explicit sexual materials.  Chief Justice Warren limited his concurrence "to the facts before us and to the validity of the statutes in question as applied." *Id*. at 494.  Justice Harlan concurred in the California action (*Albers*), but dissented in *Roth* (the Federal prosecution) presciently noting that the constitutionality of federal obscenity regulation was "attenuated" (*Id*. at 505) because "Congress has no substantive power over sexual morality." (*Id*. at 504).  Justices Douglass and Black dissented noting that there was  "no special historical evidence that literature dealing with sex was intended to be treated in a special manner by those who drafted the First Amendment" (*Id*. at 514) and declaring the "legality of a publication in this country should never be allowed to turn either on the purity of thought which it instills in the mind of the reader or on the degree to which it offends the community conscience." *Id* at 513.

[5]    *Ex parte Jackson*, 96 U.S. 727; *U.S. v. Chase*, 135 U.S. 255; *Robertson v. Baldwin*, 165 U.S. 275; *Public Clearing House v. Coyne*, 194 U.S. 497; *Hoke v. U.S.*, 227 U.S. 308; *Near v. Minnesota*, 283 U.S. 697; *Chaplinsky v. New Hampshire*, 315 U.S. 568; *Hannegan v. Esquire, Inc.*, 327 U.S. 146; *Winters v. New York*, 333 U.S. 507; *Beauharnais v. Illinois*, 343 U.S. 250; *Grimm v. U.S.*, 156 U.S. 604; *Rosen v. U.S.*, 161 U.S. 29; *Swearingen v. U.S.*, 161 U.S. 446; *Andrews v. U.S.*, 162 U.S. 420; *Price v. U.S.*, 165 U.S. 311; *Dunlop v. U.S.*, 165 U.S. 486; *Bartell v. U.S.*, 227 U.S. 427; *U.S. v. Limehouse*, 285 U.S. 424.

[6]    *Ex-Parte Jackson*: regulation of public <u>morals</u>; *US v Chase*: regulation of  "indecent" speech ... advocating <u>immoral</u> acts (abortion); *Robertson v. Baldwin*: "blasphemous or indecent articles ... injurious to public <u>morals</u>"; *Public Clearing House v. Coyne*:   "dissemination ... of information ... calculated to debauch the public <u>morality</u>"; *Hoke v. U.S.*: "the police power ... to regulate the <u>morals</u> of their citizens"; *Near v Minnisota*: scandalous matter detrimental to "public <u>morals</u>" and noting "the

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

1    no true First Amendment issue was squarely presented.[7]

2    Yet just two years later, in *Kingsley International Pictures v. Regents of the University of*

3    *the State of New York*, 360 U.S. 684 (1959), the Court struck down a motion picture licensing

4    scheme employed to censor a film dealing with an adulterous relationship "contrary to the moral

5    standards, the religious precepts, and the legal code of its citizenry." *Id* at 688.

6    The concept that obscenity was <u>totally</u> unprotected speech was initially called into

7    question in *Freedman v. Maryland*, 380 U.S. 51 (1965) where the Court held that the Fourteenth

8    Amendment precluded the imposition of censorship systems - even those targeting obscenity -

9    absent procedural safeguards. *Id.* at 57-58, (citing *Marcus v. Search Warrant*, 367 U.S. 717, 731

10   (1961).[8]  (See also *A Quantity of Copies of Books et Al., v. Kansas*, 378 U.S. 205 (1964) - "State

11   regulation of obscenity must conform to procedures that will ensure against the curtailment of

12   constitutionally protected expression..." *Id* at 210.)

13   Justice Goldberg's dissent in *Jacobellis v Ohio*, 378 U.S. 184 (1964) acknowledged the

14   <u>context</u> of the dissemination of sexually explicit speech was important to the government interest

15   in regulating it. "It does not follow that the Constitution requires absolute freedom to exhibit

16   every motion picture of every kind <u>at all times and all places</u>." *Id*. at 198, emphasis added.

17

18

19   _____

20   primary requirements of <u>decency</u> may be enforced against obscene publications"; *Chaplinski v. New Hampshire*: "social interest in order and <u>morality</u>"; *Hannegan v. Esquire*: "Such writings and pictures

21   may be in that obscure and treacherous borderland zone where the average person hesitates to find them technically obscene, but still may see ample proof that they are <u>morally</u> improper..."; *Winters v. New*

22   *York*: "free press in its relation to public <u>morals</u>"; *Beauharnais v. Illinois*: a group libel statute which outlawed depictions of depravity, criminality, unchastity, or lack of virtue of a class of citizens

23   (essentially overruled); *Grimm v. US*:  "defendant ... engaged in a business offensive to good <u>morals</u>..." *Rosen v. US*: "tendency of the matter is to deprave and corrupt the <u>morals</u> of those whose minds are open

24   to such influence..."; *Swearengen v. US*: " the use of the mails to circulate or deliver matter to corrupt the <u>morals</u> of the people" noting 'obscene,' 'lewd,' and 'lascivious' speech was a  "form of <u>immorality</u>

25   which has relation to sexual impurity..."

26

27   [7]   *Andrews v. U.S.* was an entrapment case; *Price v. U.S.* dealt with jury instructions; *Bartell v. US* was a Sixth Amendment case and *U.S. v Limehouse* dealt with statutory construction.

28   [8]   Douglass, J and Black, J dissented stating that any form of censorship was unconstitutional.

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

Even Justice Potter Stewart, who's famous "I know it when I see it" characterization of obscenity (*Jacobellis*, 378 U.S. at 197 (Stewart, J. concurring)) is widely known, later reexamined and retreated from his previous position. In his dissent in *Ginzberg v. U.S.*, 383 U.S. 463 (1966), he wrote:

"the Constitution protects coarse expression as well as refined, and vulgarity no less than elegance. A book worthless to me may convey something of value to my neighbor. In the free society to which our Constitution has committed us, it is for each to choose for himself." *Id* at 956.[9]

The next "test" of obscenity arose in *A Book Named 'John Cleland's Memoirs of a Woman of Pleasure,' et al v. Attorney General of the Commonwealth of Massachusetts*, 383 U.S. 413 (1966) which engrafted an "utterly without redeeming social value" component on the *Roth* standard. *Id*. at 418.[10] In his dissent from the fractured plurality opinion, Justice White posed the seemingly obvious question: "why shouldn't the fact that some people buy and read such material prove its 'social value'?" *Id* at 461.[11]

Two years later, the tortured nature of obscenity jurisprudence was discussed by Justice Harland in his dissent in *Interstate Circuit*, supra, in which he noted that in the thirteen obscenity cases since *Roth*, there had been a total of 55 separate opinions among the Justices. *Id* at 1315, fn 1.

The next major development was the seminal case of *Stanley v. Georgia*, 394 U.S. 557 (1969). *Stanley* firmly established that "private possession of obscene matter cannot

---

[9]  In footnote 1 to his dissent, Justice Stewart adopted the position that the context of the publication was important noting it was a different situation where publication occurred "in a manner so blatant or obtrusive as to make it difficult or impossible for an unwilling individual to avoid exposure to it."

[10]  The *Memoirs* test only garnered a three vote plurality, however that became the obscenity test of the day is it was the "position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188  (1977).

[11]  Justice Stevens seemed to adopt this logic (as well as a general disagreement with the obscenity doctrine as a whole) in his concurring and dissenting opinion in *Marks*, supra, where he wrote "[h]owever distasteful these materials are to some of us, they are nevertheless a form of communication and entertainment acceptable to a substantial segment of society; otherwise, they would have no value in the marketplace. *Marks*, at 198

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

1  constitutionally be made a crime." *Id*. at 559.  Yet *Stanley* went far further.  *Stanley* also

2  acknowledged that *Roth* and its progeny recognized that a "valid governmental interest in

3  dealing with the problem of obscenity ... cannot, <u>in every context</u>, be insulated from <u>all</u>

4  constitutional protections." *Id*. at 563 (emphasis added).  Further, the *Stanley* Court explicitly

5  rejected Georgia's asserted "right to protect the individual's mind from the effects of obscenity"

6  finding it nothing more than an assertion that the State has the right to control the moral content

7  of a person's thoughts." *Id* at 565.[12] The *Stanley* Court <u>correctly</u> characterized obscenity laws

8  as attempts "to control public dissemination of ideas <u>inimical to the public morality</u>." *Id*. at 566

9  (emphasis added). *Stanley* also recognized that the context of dissemination was important noting

10 that preventing the exposure of sexually explicit works to minors or unwilling recipients was a

11 significantly different government interest. *Id* at 567.

12      The additional danger of the obscenity doctrine's use for political expediency - which may

13 be an issue in this case[13] - was explicitly recognized by Justice Douglass in his concurring

14 opinion in *KOIS v. Wisconsin*, 408 U.S. 229 (1972), where he noted that "the vague umbrella of

15 obscenity laws was used in an attempt to run a radical newspaper out of business." *Id* at 232-33.

16      In 1973, four cases, <u>all decided five to four</u>, tried to add some clarity to the ongoing

17 obscenity debate[14]: *Miller v. California*, 413 U.S. 15 (1973); *Paris Adult Theatre I v. Slaton*,

18 413 U.S. 49 (1973); *U.S. v. 12 200ft Reels of Film*, 413 U.S. 123 (1973); and, *U.S. v. Orito*,

19 413 U.S. 139 (1973).

20

21

22      [12] *Stanley* also acknowledged, at fn 8, that obscenity was not actually a crime, but rather a "sin"
23 citing Henkin, Morals and the Constitution: The Sin of Obscenity, 63 Col.L.Rev. 391, 395 (1963)

24      [13]  John Stagliano has been an outspoken advocate for libertarian causes, sexual freedom and
25 expression.  Additionally, he produced an erotic dance number for the 2008 Adult Video News Awards,
the "Oscars" of the adult entertainment industry.  The number was performed by dancers, aerialists, and
26 other erotic performers who appeared in Mr. Stagliano's Las Vegas show <u>The Fashionistas</u>.  The number
condemned the government's prosecution of erotic images, thoughts and adult sexuality and warned the
27 viewers of the dangers of unchecked government monitoring of private Internet viewing habits.

28      [14]  Or, as Justice Berger wrote, to clarify the "somewhat tortured history of the Court's obscenity
decisions." *Miller* at 23.

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1  *Miller*, which again dealt with the mailing of <u>unsolicited</u> hard core sexual materials "thrust

2  by aggressive sales action upon unwilling recipients who had in no way indicated any desire to

3  receive such materials," (*Id* at 18) upheld the basic holding of *Roth*, "that obscene material is

4  unprotected by the First Amendment." *Id* at 23.  Because a majority of the Court had, since *Roth*,

5  been unable to agree on a workable obscenity standard (*Id*. at 22), the Court created what is now

6  known as the *Miller* test.  *Miller* asks: (a) whether 'the average person, applying contemporary

7  community standards' would find that the work, taken as a whole, appeals to the prurient interest;

8  (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically

9  defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious

10  literary, artistic, political, or scientific value. *Miller* at 24 (internal citations omitted.)

11  In *Miller*, Justice Burger attempted to contrast "hard core pornography from expression

12  protected by the First Amendment." *Miller* at 29 (internal quotes omitted.)  Yet clearly, both

13  academically and as viewed pragmatically through the eyes of history, the test has failed to

14  "extricate us from the mire of case-by-case determinations of obscenity." *Jenkins v. Georgia*,

15  418 U.S. 153 (1974) (Brennan, J., concurring).[15],[16]

16

17  [15]  In *Jenkins*, the Court reversed an obscenity conviction for the showing of the film Carnal

18  Knowledge which is now considered a modern classic.  This plainly illustrates the danger of the obscenity doctrine; how even under *Miller*, a work such as Carnal Knowledge could be charged with,

19  let alone convicted of, obscenity. Works now studied as masterpieces of English literature, such as Lord Byron's <u>Don Juan</u>, have been held to be obscene. *Lord Byron v. Dugdale*, 1 L.J.Ch. 239 (1823), (see F.

20  Schauer, <u>The Law of Obscenity 6</u> (1976) (quoting Craig, <u>Suppressed Books 22</u> (1963).) Similarly, American courts have ordered suppression of works now regarded as classics, such as Theodore

21  Dreiser's <u>An American Tragedy</u>, (*Commonwealth v. Friede*, 271 Mass. 318, 171 N.E. 472 (1930)), D.H. Lawrence's <u>Lady Chatterly's Lover</u>, (*People on Complaint of Sumner v. Dial Press, Inc.*, 182 Misc. 416,

22  48 N.Y.S.2d 480 (Magis.Ct.1944)) and Erskine Caldwell's <u>God's Little Acre</u> (See *Attorney General v.*

23  *Book Named "God's Little Acre"*, 326 Mass. 281, 93 N.E.2d 819 (1950).

24  [16]  *Miller* was refined on several subsequent occasions.  In *Pinkus v. United States*, 436 U.S. 293

25  (1978), the court ruled that children could not be included in the determination of community standards. *Id* at 297.  In *Pope v. Illinois*, 481 U.S. 497 (1987),  the Court removed the  community standards

26  evaluation as applied to the prong three values element, substituting  a objective reasonable person standard.  *Id*.  In so doing, the Court reaffirmed that "[t]he First Amendment protects works which, taken

27  as a whole, have serious literary, artistic, political, or scientific value, regardless of whether the government or a majority of the people approve of the ideas these works represent." *Id* at 500, 1921

28  citing *Miller*, 413 U.S. at 34. Additionally, in his concurrence in *Pope*, Justice Scalia expressly called for the reevaluation of *Miller*. *Pope* at 505 (Scalia, J. concurring).

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 – Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

Today, adult entertainment is readily available through numerous secure methods of distribution; DVD (purchase and rental), hotel pay-per-view, satellite and cable TV, and over the Internet.

One of *Miller*'s companion cases, *Paris Adult Theater I*, supra, involved a public movie house screening allegedly obscene movies. The defendants argued that <u>public</u> display to consenting adults should enjoy the same protection as private possession under *Stanley*. The Court ruled otherwise holding that obscene films do not "acquire constitutional immunity from state regulation <u>simply</u> because they are exhibited for consenting adults only." *Id* at 57 (emphasis added). The stated rational that "there are legitimate state interests at stake in stemming the tide of commercialized obscenity" was based on "a postulate that the primary requirements of <u>decency</u> may be enforced against obscene publications." *Id*, (emphasis added.) Again, the *Paris* Court upheld the statute "based on concerns of <u>decency and morality</u>." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991) (Scalia, J. concurring) While the *Paris* Court refused to recognize a 'zone' of 'privacy' that followed a consumer of obscene materials, *Id.* at 66, the Court could never have envisioned - in 1973 - the advent of the home VCR, DVDs, cable and satellite programming, pay-per-view hotel programming, or the Internet, and their effect on the growth of adult entertainment into a 14 billion dollar per year industry.[17]

Notably, Justice Brennan, the author of the Court's five to four decision in *Roth*, authored the lead dissent in *Paris* (as well as additional dissents in the three other cases of the day including *Miller*) coming to the conclusion that while

> "the interests of the State--apart from the question of juveniles and unconsenting adults–are trivial or nonexistent ... these interests cannot justify the substantial damage to constitutional rights and to this Nation's judicial machinery that inevitably results from state efforts to bar the distribution even of unprotected material to consenting adults." *Id* 112-13 (Brennan, J. dissenting)

---

[17] It is widely regarded as fact that the explosive growth of consumer videotape formats (VHS and BetaMax), DVD players and the Internet were driven largely by the desire to watch adult oriented entertainment in the privacy of the home. (See generally Peter Johnson, "*Pornography Drives Technology*: Why Not to Censor the Internet," Federal Communications Law Journal 49:1 (November 1996))

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1  Further, Justice Brennan (all-be-it belatedly) expressly adopted the rationale of *Stanley*,

2  that the "right to receive information and ideas, regardless of their social worth . . . is fundamental

3  to our free society." *Paris* at 413 U.S. at 85, fn 9 (Brennan, J. dissenting) citing *Stanley* 394 U.S.

4  at 564. This became the Court's position in 1996 when it stated

5
6  "[t]he commercial marketplace, like other spheres of our social and cultural life,
   provides a forum where ideas and information flourish. Some of the ideas and
   information are vital, some of slight worth. But the general rule is that the speaker
7  and the audience, not the government, assess the value of the information
   presented." *44 Liquormart v. Rhode Island* 517 U.S. 484, 503-504 (1996) (citing
8  *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S.
   748, 762 (1976).
9

10  In *44 Liquormart*, Justice Stevens, writing for the Court, noted "[t]he First Amendment

11  directs us to be especially skeptical of regulations that seek to keep people in the dark for what

12  the government perceives to be their own good." *Id*. at 503.

13  In 1992, a major shift away from the concept of "unprotected speech" occurred in *R.A.V.*

14  *v. City of St. Paul*, 505 U.S. 377 (1992). Justice Scalia, writing for the Court, first reaffirmed that

15  the First Amendment "generally prevents government from proscribing speech ... or even

16  expressive conduct, because of disapproval of the ideas expressed." *Id.* at 382. He

17  reaffirmed that "[c]ontent-based regulations are <u>presumptively</u> invalid." *Id*. (Emphasis added)[18]

18  Justice Scalia went on to clarify that certain "areas of speech can, consistently with the First

19  Amendment, be <u>regulated</u> because of their constitutionally proscribable content (obscenity,

20  defamation, etc.) - <u>not</u> that they are categories of speech <u>entirely invisible</u> to the Constitution."

21  *Id* at 383 (emphasis added). Justice Scalia's stated rational was that such categories of speech

22  (including obscenity) were "of such <u>slight</u> social value ... that any benefit that may be derived

23  from them is clearly outweighed by the social interest in order and <u>morality</u>." *Id.* (emphasis

24  added, citing *Chaplinsky*, supra, 315 U.S. at 572).

25  In his concurrence, Justice White (joined by Justices Blackmun, O'Connor and Stevens)

26  observed that the regulation of even purportedly "unprotected speech" must "be rationally related

27  to a legitimate government interest." *Id* at 406 (White, J., concurring).

28

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

---

[18]  It is indisputable that the prosecution of obscenity is a content based restriction on speech.

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

Accordingly, there must now be, <u>at the very least</u>, a rational bases to regulate the dissemination of obscenity by and between consenting adults.

### III

### THE EVOLUTION OF SEXUAL PRIVACY

"Neither the Bill of Rights nor the specific practices of States at the time of the adoption of the Fourteenth Amendment marks the outer limits of the substantive sphere of liberty which the Fourteenth Amendment protects. The full scope of the liberty guaranteed by the Due Process Clause ... is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, ... and which also recognizes, what a reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 848 (1992).

Even as the obscenity doctrine wound its way through constitutional review, the Court began to acknowledge that persons enjoyed a liberty interest protected by Fifth and Fourteenth Amendment Substantive Due Process in matters related - directly and indirectly - to sexual privacy. These cases included *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942) (the right to beget a child); *Griswold v. Connecticut*, 381 U.S. 479 (1965) (the right to use contraceptives); *Loving v. Virginia*, 388 U.S. 1 (1967) (the right to interracial marriage); *Eisenstadt v. Baird*, 405 U.S. 438 (1972) (the right of single persons to obtain contraceptives); *Roe v. Wade*, 410 U.S. 113 (1973) (the right to obtain an abortion); and *Casey*, supra (the right to be free from undue burdens in obtaining abortion).

The two most germane series of cases which illustrate the evolving nature of the law's tolerance of sexual matters and parallel Defendants' Substantive Due Process claims asserted herein, involve the use of contraception and the development of the right to sexual privacy.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 · Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

**A.    The *Griswold - Carey* Line of Contraceptive Cases.**

Prior to the mid-1960s, many states made the use of contraceptives illegal. In *Griswold v. Connecticut*, 381 U.S. 479 (1965), the Court held that the Due Process Clause of the Fourteenth Amendment, as well as "penumbras" of the First, Fourth and Fifth Amendments (*Id* at 484-85) protected the right of married persons to use contraceptives, overcoming Connecticut's stated "policy against all forms of promiscuous or illicit sexual relationships, be they premarital or extramarital" based on its determination that "the use of artificial or external methods of contraception [was] immoral...." *Griswold*, supra White, J. concurring at 505

Just seven years later, citing the protections of the Fourteenth Amendment, the Court expanded the right to use contraceptives to unmarried persons in *Eisenstadt v. Baird*, 405 U.S. 438 (1972).  The Court held:

> "If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Id* at 453.

In 1977, the Substantive Due Process right to <u>obtain</u> contraception became the central focus in  *Carey v. Population Services International*, 431 U.S. 678 (1977).  In *Carey*, the Court found a New York state law which restricted the sale and marketing of contraceptives unconstitutional. In  doing so, the Court held that a "prohibition against the sale [of contraceptives] ... would intrude upon individual decisions as harshly as a direct ban on their use" and "access [to contraceptives] is <u>essential to the exercise of the constitutionally protected right</u>" to use contraceptives.  *Id*. at 687-88 (emphasis added).

The Court's explicit holding in *Carey* acknowledges that a Substantive Due Process right of privacy to use a sexually related product would be meaningless if the state were permitted to simply forbid the sale of the product to those who wish to use it.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1

**B.      The *Bowers - Lawrence* Sexual Privacy Line of Cases**

2

3     In 1986, the Court decided *Bowers v. Hardwick*, 478 U.S. 186 (1986) holding there was

4     no fundamental right of sexual privacy protecting homosexuals who engaged in sodomy. As in

5     the obscenity debate, the Court based its rational on the state police power to protect public

6     morals.

7

8     "Even if the conduct at issue here is not a fundamental right, respondent asserts that there must be a rational basis for the law and that there is none in this case other than the presumed belief of a majority of the electorate in Georgia that homosexual sodomy is immoral and unacceptable. This is said to be an inadequate rationale to support the law. The law, however, is constantly based on notions of morality, and if all laws representing essentially moral choices are to be invalidated under the Due Process Clause, the courts will be very busy indeed." *Id* at 196 (emphasis added).

9

10

11

12     A dissent by Justice Blackmun[19] castigated the majority, arguing *Bowers* was

13     "no more about a fundamental right to engage in homosexual sodomy ... than *Stanley v. Georgia* was about a fundamental right to watch obscene movies, or *Katz v. United States* was about a fundamental right to place interstate bets from a telephone booth. Rather, this case is about the most comprehensive of rights and the right most valued by civilized men, namely, the right to be let alone." *Id* at 199 (Blackmun, J, dissenting (internal quotations and citations omitted).)

14

15

16

17     Justice Blackmun's dissent exposed the fundamental flaw in *Bowers*; that the Court had

18     asked and answered the wrong question.[20] He went on to identify the proper issue in all such

19     cases: Is morality a sufficient government interest to deprive persons of a liberty interest

20     protected by Substantive Due Process or other constitutional guarantees? Justice Blackmun

21     argued it was not stating that "the assertion that traditional Judeo-Christian values proscribe the

22     conduct involved ... cannot provide an adequate justification" for such a prohibition. *Id* at 211.

23     He wrote "[n]o matter how uncomfortable a certain group may make the majority of this Court,

24     we have held that mere public intolerance or animosity cannot constitutionally justify the

25     deprivation of a person's physical liberty." *Id* at 212 (internal quotes omitted, citing *O'Connor*

26     _____

27     [19]   Justices Brennan, Marshal and Stevens joined the dissent.

28     [20]   The wrong question being: was there a fundamental right to engage in homosexual sodomy?

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

1    *v. Donaldson*, 422 U.S. 563, 575 (1975)).

2         Further, Justice Blackmun, in acknowledging the Judeo-Christian morality issue (*Bowers*

3    at 211-212), also raised a question which is directly applicable to the obscenity issue in this case;

4    does the prohibition of the acquisition of sexually graphic materials (even if "obscene") by and

5    between consenting adults violate the Establishment Clause?

6         In *Stanley*, the Court had tacitly acknowledged the Establishment issue presented by

7    prosecuting the possession of obscene materials, positing that obscenity was not actually a crime,

8    but rather a "sin." *Stanley*, supra at 566, fn 8 (citing Henkin, Moals and the Constitution: The Sin

9    of Obscenity, 63 Col.L.Rev. 391, 395 (1963)).   Clearly the imposition of Judeo-Christian

10   morality under penalty of criminal law was on Justice Blackmun's mind in his dissent in *Bowers*,

11   as it was on Justice Marshall's mind when he authored the Court's decision in *Stanley*.

12        In 2003, the Court chose to reexamine its holding in *Bowers*.   In the landmark case of

13   *Lawrence v. Texas,* 539 U.S. 558 (2003), the Court adopted *in toto* the rationale of Justice

14   Blackmun's dissent.

15        Writing for the Court, Justice Kennedy artfully stated:

16        "[l]iberty protects the person from unwarranted government intrusions into a
          dwelling or other private places.  In our tradition the State is not omnipresent in the
17        home.  And there are other spheres of our lives and existence, <u>outside the home,</u>
          where the State should not be a dominant presence.  <u>Freedom extends beyond</u>
18        <u>spatial bounds.  Liberty presumes an autonomy of self that includes freedom of</u>
          <u>thought, belief, expression, and certain intimate conduct</u>.  The instant case involves
19        liberty of the person both in its spatial and in its more transcendent dimensions."
          *Id* at 562 (emphasis added).

20

21        The Court acknowledged that the *Bowers* decision disclosed "the Court's own failure to

22   appreciate the extent of the liberty at stake.  To say that the issue in *Bowers* was simply the right

23   to engage in certain sexual conduct demeans the claim the individual put forward." *Lawrence*,

24   at 566.[21]  The Lawrence Court held that while many considered sodomy unethical and <u>immoral,</u>

25

26        ─────────────

27        [21]  The Court examined the development of laws against homosexuals and found, contrary to
     *Bowers* that there was no longstanding history of laws directed at homosexual conduct.  The Court
     acknowledged that the *Bowers* Court was making "the broader point," that sodomy had been condemned
28   as <u>immoral</u>, in no small part "based on <u>religious</u> beliefs, conceptions of right and acceptable behavior,
     and respect for the traditional family."  *Id* at 571 (emphasis added)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 – Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1   those considerations <u>did not answer the proper question</u>; whether the majority may use the power

2   of the State to enforce these views on the whole society through operation of the criminal law.

3   Justice Kennedy wrote "[o]ur obligation is to define the liberty of all, <u>not to mandate our own</u>

4   <u>moral code</u>." *Id* at 571(emphasis added) citing *Planned Parenthood v. Casey*, supra, 505 U.S. at

5   850.

6        Presciently, Justice Scalia authored a dissent in which he correctly envisioned the central

7   issue presented here; obscenity laws are sustainable "only in light of *Bowers'* validation of laws

8   based on moral choices" (*Lawrence,* at 590, Scalia, J, dissenting); and, as majoritarian sexual

9   morality is not even a *legitimate* state interest, obscenity laws cannot "survive rational-basis

10  review." (*Id* at 599).

11

12  **IV**

13  **THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS PROTECT THE RIGHT**

14  **TO OFFER SEXUALLY EXPLICIT SPEECH TO WILLING ADULT RECIPIENTS**

15

16       Defendant herein offers sexually explicit entertainment only to those adults who wish to

17  view it. The fact that he does so for financial gain is immaterial. *Buckley v. Valeo*, 424 U.S. 1,

18  35-59 (1976).

19       The development of First Amendment and Substantive Due Process jurisprudence, and

20  their convergence through the *Bowers/Lawrence* and *Griswold/Carey* lines of cases, require that

21  this prosecution be dismissed. Thirty years of increased societal acceptance and judicial

22  protection of private and semi-private sexual practices requires reevaluation of the confluence

23  of First Amendment Speech and Establishment and Fifth and Fourteenth Amendment Due

24  Process protections vis-a-vis the government's interest in regulating sexuality and sexually

25  explicit materials.  Justice Kennedy made this clear when he wrote, in *Lawrence*,  there is "an

26  emerging awareness that liberty gives substantial protection to adult persons in deciding how to

27  conduct their private lives in matters pertaining to sex." *Lawrence* at 572  Clearly, viewing

28  sexually explicit materials in the privacy of one home is a matter "pertaining to sex."

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1    Additionally, the government has "greater power to regulate nonverbal, physical conduct

2    than to suppress depictions or descriptions of the same behavior" *Miller*, supra, 413 U.S. at 26,

3    fn 8. Yet the sexually explicit <u>acts</u> portrayed in the works are lawful and constitutionally

4    protected under *Lawrence*. Further, these performances, which are irrefutably expressive

5    conduct, are also protected by the First Amendment. *Texas v. Johnson*, 491 U.S. 397 (1989). And

6    both producing and performing in the productions is lawful in the State of California. (See *People*

7    *v. Freeman*, 758 P.2d 1128, 250 Cal.Rptr. 598, 57(1988).)[22]

8    As the sexual activity is protected, *a-fortiori* the government cannot criminalize

9    depictions of the activity, regardless of how graphic the depictions may be, unless foisted upon

10   an unwilling viewer or a minor. Additionally, the State may not "suppress the dissemination of

11   concededly truthful information about entirely lawful activity, fearful of that information's effect

12   upon its disseminators and its recipients." *Virginia Pharmacy*, supra, 425 U.S. at 773.

13   As always, the definition of the protected interest in issue is crucial. Courts must

14   undertake a "careful description" of the "asserted fundamental liberty interest..." *Washington v.*

15   *Glucksberg*, (1997) 521 U.S. 702, 721. The government here contends, as always, that the right

16   asserted by Defendants is the right to commercial distribution of obscene materials. But that is

17   no more the central issue in this case than was the right to engage in homosexual sodomy was in

18   *Lawrence*.

19   The recent case of *Reliable Consultants, Inc., v. Earle* (5th Cir 2008) 517 F.3d 738 is

20   illustrative. *Reliable Consultants* involved a challenge to the Texas "obscene devises" law which

21   generally outlawed the sale, advertising, giving or lending of devices designed or marketed for

22   sexual stimulation. *Id.* at 741. In attempting to defend a law banning the sale of vibrators, Texas

23   sought to define the issue as "the right to stimulate one's genitals for non-medical purposes

24   unrelated to procreation or outside of an interpersonal relationship." *Id* at 743. The plaintiffs,

25

26   [22]    The First Amendment does not permit the government, under the guise of exercising police
powers, to bar a citizen of one State from disseminating information about an activity that is legal in that
27   State. *Bigelow v. Virginia*, 421 U.S. 809, 824-25 (1975). As the sexual activity is constitutionally
protected in California (*Lawrence*), and as the production of explicit materials is as well (*Freeman*), the
28   offering of even "obscene" depictions of activity that is otherwise legal in California may not be
criminalized.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1  who wanted to offer sex toys for the private consensual use of their customers, asserted that the

2  right in question was "the individual's substantive due process right to engage in private intimate

3  conduct free from government intrusion." *Id.* The trial court found there "was no constitutionally

4  protected right to publicly promote obscene devices" and dismissed the plaintiff's case.

5      The Fifth Circuit reversed, citing *Lawrence*, and recognized that by defining the right in

6  question too narrowly, the trial court (as in *Bowers*, supra) had failed to grasp the true nature of

7  the liberty interest at stake - the substantive due process right "to be free from governmental

8  intrusion regarding the most private human contact, sexual behavior." *Reliable Consultants*,

9  supra, at 744. In invalidating the Texas obscene devices law, the Fifth Circuit found:

> [a]n individual who wants to legally use a safe sexual device during private
> intimate moments alone or with another is unable to legally purchase a device in
> Texas, which heavily burdens a constitutional right. This conclusion is consistent
> with the decisions in *Carey* and *Griswold*, where the Court held that restricting
> commercial transactions unconstitutionally burdened the exercise of individual
> rights. *Reliable Consultants*, *supra*, at 744.

15      As in *Reliable Consultants*, the federal obscenity statues unconstitutionally burden the

16  clearly established rights of Defendants' customers. As the Court held in *Stanley*, the First, Fifth

17  and Fourteenth Amendments protect the right to view even "obscene" videos in the privacy of

18  one's home.

19      The private viewing of explicit sexual materials for the purposes of education,

20  entertainment, or even merely for the enhancement of sexual gratification, implicates the same

21  substantive due process rights as those validated in *Lawrence* - the "realm of personal liberty

22  which the government may not enter" *Lawrence*, at 578 citing *Casey*, at 847 in "matters

23  pertaining to sex." *Lawrence,* at 572. And as that privacy interest now "extends to other spheres

24  of our lives and existence, outside the home" *Lawrence*, 562, the confidential delivery of explicit

25  materials to a willing private adult viewer must also be protected. The Court has acknowledged

26  that "access" is "essential" to the exercise of constitutionally protected rights. *Carey*, supra, at

27  687-88.

28

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

The right to possess obscene materials protected by *Stanley* must now include the Substantive Due Process right to acquire them, and a corollary right to provide them to consenting adults who request them. *Griswold*, *Carey, Stanley*, *Virginia Pharmacy, Reliable Consultants*.[23]

Sexually explicit speech, including obscenity, is <u>not</u> totally without constitutional protection, but rather may be regulated based <u>only</u> on a legitimate government interest. <u>*R.A.V.*</u> at 406 (White, J., concurring). The regulation of obscenity as between consenting adults is, and always has been, based on morality *Roth, Kingsley, Stanley, Miller, Lawrence* (Scalia, J. dissenting). However the imposition of majoritarian morality is no longer a sufficient governmental interest to deprive persons of a liberty interest protected by Substantive Due Process. "[T]he fact that the governing majority in a State has traditionally viewed a particular practice [such as obtaining and viewing allegedly obscene videos] as immoral is not a sufficient reason for upholding a law prohibiting the practice." *Lawrence* at 577.

<u>**V**</u>

**THE OBSCENITY DOCTRINE IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO INTERNET COMMUNICATIONS**

The government has based the third, sixth and seventh counts of the indictment on a work identified as a "a motion-picture trailer identified as "FETISH FANATIC CHAPTER 5" The trailer in question was a portion of, and downloaded from, the Evil Angel® website located at www.evilangel.com.

---

[23]  See also <u>State of Hawaii v. Kam</u>, 69 Haw. 483,  748 P.2d 372 (1988) which invalidated Hawaii's obscenity statute under Hawaii's state constitutional right of privacy.  Justice Hayashi found it "<u>obvious</u> that an adult person cannot read or view pornographic material in the privacy of his or her own home if the government prosecutes the sellers of pornography ... and consequently bans any commercial distribution. <u>Kam</u> 69 Haw. at 495, 950 P2d at 379 (emphasis added).  Hawaii's Supreme Court has noted that its State right of privacy "is similar to the privacy right discussed in [federal] cases such as <u>Griswold v. Connecticut</u>, <u>Eisenstadt v. Baird</u>, <u>Roe v. Wade</u>, etc." State of Hawaii v. Mallan, 86 Haw. 440, 444, 950 P.2d 178, 182 (1998) (internal citations omitted)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 • Fax (818)386-9289

1    Included in the government's production were the notes of Special Agent Daniel Bradley

2  who states "SA Bradley... accessed www.evilangel.com ... and subsequently selected the trailer

3  BELLEDONNA'S FETISH FANATIC 5 for download." (See Exhibit 2) Based on Agent

4  Bradley's own notes, it is indisputable that the trailer was a "part of" the www.evilangel.com

5  Internet website which Agent Bradley <u>chose</u> to download individually.[24] Further buttressing this

6  fact is that the government's forfeiture claims - as they pertain to the internet based counts - do

7  not seek forfeiture of the "trailer" in issue, but rather seek forfeiture of <u>the entire Evil Angel</u>

8  <u>website</u>.

9    As discussed above, the three part *Miller* test requires works must be taken <u>as a whole</u> in

10  establishing both the prurient interest (prong one) and literary, artistic, political or scientific value

11  (prong 3) elements. *Miller* at 24.   Even as far back as *Roth*, the Court determined that a work

12  must be evaluated "as a whole" because "judging obscenity by the effect of isolated passages ...

13  must be rejected as unconstitutionally restrictive of the freedoms of speech and press." *Roth* at

14  489. (See also *Kois v. Wisconsin*, supra, 408 U.S. 229 - obscenity conviction based on 2 pictures

15  taken out of context of the publication as a whole reversed).   The *Miller* Court stated that

16  obscenity can be regulated "subject to the specific safeguards enunciated" (*Id* at 36) including

17  the requirement that a work be taken as a whole.

18    The trailer in issue is indisputably just a <u>minuscule portion</u> of the Evil Angel website. The

19  website includes a home page with a welcome from Mr. Stagliano, a description of the nature of

20  the website (although no sexually explicit images appear on the home page), and the legally

21  mandated disclosures.[25] Further into the website, there are Box Art images, descriptions, cast lists

22  and trailers in various formats and resolutions for more than 800 Evil Angel branded productions,

23  links to not less than fifteen different directors, links allowing the purchase of DVDs as well as

24

25    [24]  This is identical to the issue that would be apparent if Agent Bradley had gone into a magazine
shop and chosen to tear out an individual page of a magazine or book.

26

27    [25]  18 U.S.C. 2257 requires the publisher of materials featuring actual sexual conduct to obtain,
maintain and make available for inspection records to establish the age of the performers.  Note however
that while 18 U.S.C. 2257 has recently been declared unconstitutional (*Connection Distributing Co. v.*

28  *Keisler*, 505 F.3d 545 (6th Cir. 2007) *en banc* review granted) all required disclosures remain on the
website.

United States v. Stagliano, et al
                                                  Motion to Dismiss (John Stagliano)

on-line streaming of various productions (all requiring credit card payment and additional averments that the prospective purchaser is over 18 years of age and will view the works in private), product announcements and descriptions, company news (e.g., the winning of awards and additional matters of interest to company customers), and an interactive news-letter. Therefore, charging the single trailer downloaded from the Evil Angel® website, taken out of context with the entire website, is constitutionally impermissible and counts three, six and seven of the indictment must be dismissed.

Additionally, the government's latest attempt to isolate a portion of an on-line website and prosecute only that portion exposes a new and significant constitutional infirmity of the federal obscenity statues *in toto* as applied to Internet communications.

The obscenity doctrine evolved long before the advent of the internet. In 1957 (when *Roth* was decided) and even in 1973 (when *Miller* was decided) "taken as a whole" had a clear and unambiguous meaning - an entire movie, an entire book, a whole magazine, etc.. However when applied to the internet, the meaning of "taken as a whole" has been found to be unconstitutionally vague. *A.C.L.U. v. Gonzales*, 478 F.Supp.2d 775, 818 (E.D.Pa 2007); *A.C.L.U. v. Mukasey* —F.3rd— (2008 WL 2801759 at *23 (C.A.3 (Pa.)).

This result is irrefutably evidenced by the government's prosecutorial actions here. As is clear from the face of the indictment, the government asserts that it can chose a segment (in this case a single trailer) out of a integrated Internet website made up of hundreds (if not thousands) of interconnected pages and video clips, download it individually, use that segment as the basis for an obscenity charge without having the entire website and/or the context of the segment considered, chose any jurisdiction in the United States to bring the prosecution,[26] and then force the forfeiture of the <u>entire</u> website, even its clearly non-obscene (e.g. political) elements.  This

---

[26]    As internet communications are impossible to restrict to certain geographic locations, (*A.C.L.U. v. Gonzales*, supra, 478 F.Supp.2d at 807) and as the government asserts it may bring a prosecution anywhere the materials could be found, ( *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115 (1989)) the government is then free to pick a location where either the specific segment would be found most offensive (e.g., a depiction of a black male having sex with a white female in the heart of the South), where the greatest chilling would occur, or where the most political benefit could be gained, as in this case.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 · Fax (818)386-9289

United States v. Stagliano, et al
                    Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 ~ Fax (818)386-9289

1 so clearly violates the guarantees of due process afforded by the Constitution that it cannot be

2 rationally defended.

3        While "the Constitution does not require impossible standards, all that is required is that

4 the language conveys sufficiently (sic) definite warning as to the proscribed conduct when

5 measured by common understanding and practices..." *Roth* at 491 citing *United States v. Petrillo*,

6 (1947) 332 U.S. 1, 7-8.  A statute is void for vagueness if it "forbids ... the doing of an act in

7 terms so vague that [persons] of common intelligence must necessarily guess at its meaning and

8 differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926).

9 However, if the government is free to pick and choose <u>part</u> of a clearly integrated website and

10 assert that portion constitutes a "whole" for the purposes of an obscenity prosecution, such a

11 position indisputably creates a reasonable question as to the definition of "taken as a whole" in

12 the first instant. The First Amendment prohibits "such unbridled discretion" in the government.

13 *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 133 (1992).  The Third Circuit has

14 recently ruled on this exact issue in (repeatedly) finding the Child Online Protection Act

15 unconstitutional.

16        After the Communications Decency Act (47 U.S.C. § 223) was declared unconstitutional

17 on First Amendment grounds (*Reno v. A.C.L.U.*, 521 U.S. 844  (1997)), Congress enacted the

18 Child On-Line Protection Act, 47 U.S.C. § 231, et seq (COPA). In *A.C.L.U. v. Reno*, 31

19 F.Supp.2d 473 (E.D.Pa 1999) a preliminary injunction was issued enjoining the enforcement of

20 COPA which was affirmed by the Third Circuit in *A.C.L.U. v. Reno*, 217 F.3d 162 (3rd Cir 2000).

21 The Supreme Court vacated the 3rd Circuits judgment and remanded. *Ashcroft v. A.C.L.U.*, 535

22 U.S. 564 (2002) (*COPA 1*).   On remand, the Third Circuit again affirmed the trial court's

23 injunction. *A.C.L.U. v. Ashcroft*, 322 F.3d 240 (3rd Cir 2003). This time, the Supreme Court

24 affirmed the Third Circuit's decision, including an affirmation of the preliminary injunction, and

25 remanded the case for trial. *Ashcroft v. A.C.L.U.*, 542 U.S. 656 (2004) (*COPA 2*). The trial court

26 ruled for the Plaintiff's and issued a permanent injunction. *A.C.L.U. v. Gonzales*, 478 F.Supp.2d

27 775 (E.D. Pa 2007) The Court's decision included specific conclusions of law that are applicable

28 here.

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

The trial court found:

> COPA does not define the term "as a whole" and the plain language of the statute does not lend itself to a obvious definition of "as a whole" as it might be applied to the Internet. The Third Circuit concluded in a dictum that the language of COPA clearly demonstrated that each individual "communication, picture, image, graphic image file, article, recording, writing or other matter of any kind" should be considered without context. But, as Justice Breyer noted in his dissent, "as a whole" has been traditionally interpreted in obscenity cases to require an examination of the challenged material within the context of the book or magazine in which it is contained. As Justice Kennedy noted in his concurring opinion, "The notion of judging work as a whole is familiar in other media, but more difficult to define on the World Wide Web. It is unclear whether what is to be judged as a whole is a single image on a Web page, a whole Web page, an entire multipage Web site, or an interlocking set of Web sites." Thus, with the disparate views noted above, and as discussed below, in the context of the Web, I conclude that the use in COPA of the phrase "as a whole" without any further definition, is vague. *Id.* at 818, Conclusion of Law 44 (internal citations omitted).

The Third Circuit unanimously affirmed the trial Court's determination that the "taken as a whole" language was unconstitutionally vague as applied to the Internet. *ACLU v. Mukasey*,--- F.3d ----, 2008 WL 2801759 (3rd Cir. 2008).

The "taken as a whole" language is drawn directly from <u>two</u> of the three elements of obscenity as defined in *Miller*. *COPA 1* at 570. Accordingly, as these two elements cannot constitutionally be applied to Internet speech, the Internet based charges must be dismissed.

## VI

## LOCAL COMMUNITY STANDARDS TESTS ARE
## INAPPLICABLE TO INTERNET COMMUNICATIONS

The vagueness of the "taken as a whole" requirement, and resulting due process violation, is exacerbated by the government's ability to "forum shop" when bringing obscenity charges. In affirming the initial preliminary injunction against COPA, the Third Circuit held that COPA's use of contemporary community standards rendered the statute unconstitutional as

> "[w]eb publishers are without any means to limit access to their sites based on the geographic location" materials could be effectively censored by "the most puritan of communities in any state" and, therefore, "contemporary community standards" tests were inapplicable to internet publications." *COPA 1* 535 U.S. at 573.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)986-9200 - Fax (818)986-9289

-22-

In a fractured plurality opinion, the Supreme Court reversed, finding "COPA's reliance on community standards to identify "material that is harmful to minors" does  not  *by itself* render the  statute substantially overbroad for purposes of the First Amendment." *COPA 1* 535 U.S. at 585, (emphasis in the original).

Presciently, in her concurring opinion, Justice O'Connor's wrote there was a "possibility that the use of local community standards will cause problems for regulation of obscenity on the Internet, for adults as well as children, in future cases." *COPA 1,* 535 U.S. at 587, O'Connor, J., concurring.  In his concurring opinion, Justice Breyer noted that "[t]o read the statute as adopting the community standards of every locality in the United States would provide the most puritan of communities with a heckler's Internet veto affecting the rest of the Nation. *COPA 1,* 535 U.S. at 590, Breyer, J., concurring.  Justice Kennedy, in his dissenting opinion, went further  correctly observing that while "community standards originally served as a shield to protect speakers from the least tolerant members of society" (*COPA 1*, 535 U.S. at 612),

> "[i]n the context of the Internet ... community standards become a sword, rather than a shield. If a prurient appeal is offensive in a puritan village, it may be a crime to post it on the World Wide Web... "the 'community standards' criterion as applied to the Internet means that any communication available to a nationwide audience will be judged by the standards of the community most likely to be offended by the message." (*COPA 1*, 535 U.S. at 603, Kennedy, J. dissenting.)

The Court's holding in *COPA 1* was "quite  limited." (*COPA 1* 535 U.S. at 585).  While the community standards issue "by itself" (*Id*) did not render COPA unconstitutional, other factors employed with a "community standards" test could well (and did) combine to invalidate COPA, and *a fortiori* the federal obscenity statutes as applicable to the Internet.

Here, the "community standards" issue, combined with the vagueness of "taken as a whole" and the jurisdictional "forum shopping" elements all combine to require the invalidation of the obscenity statutes as to Internet communications made to consenting adults.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 · Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 ~ Fax (818)386-9289

# VII

# PROSECUTION OF OBSCENITY IN THE DISTRICT OF COLUMBIA IMPERMISSIBLY CHILLS THE RIGHT TO PROTECT EXPRESSIVE WORKS UNDER COPYRIGHT

An additional element is presented in the government's bringing of an obscenity prosecution in the District of Columbia. Such prosecutions will, by necessity, chill the right to protect expressive works under Copyright.

It is likely that this prosecution was, at least in part, brought due to the fact that co-defendant John Stagliano, Inc. recently prevailed in a highly publicized federal copyright and trademark infringement suit in the Central District of California, therein obtaining a multi-million dollar jury verdict.[27] The award was widely reported in the adult and mainstream press and John Stagliano, a popular erotic artist,[28] was outspoken in calling on other adult oriented companies to protect their rights, and financial viability, by bringing copyright infringement actions in Federal Court.[29] The government's disclosures in this case show an alarming awareness of that case and an uncanny shift in the initial focus of prosecution from the Northern District of Alabama to its present situs. There is no question that the government was aware of the copyright case and monitored it closely.[30] (See Exhibit 3)

---

[27] Even though reduced by the trial judge to $5,000,000, the initial jury award of over $11,000,000 was the largest jury verdict ever awarded to a distributor of adult oriented entertainment for infringement of its intellectual property rights.

[28] Defendant John Stagliano is widely credited for inventing the "gonzo" style of adult entertainment which has become the mainstay of the industry. He also produces erotic magazines, and produced an erotic dance show which ran for several years in Las Vegas entitled Fashionistas which borrowed elements of his award winning film of the same name.

[29] In part due to the government's failure to bring federal criminal indictments against counterfeiters and on-line infringers of adult oriented materials, the profitability of adult production companies has fallen drastically as a result of rampant piracy which actually floods the marketplace with millions of infringing works, both tangible and over the Internet.

[30] Note also the "Government's Motion in Limine to Admit Defendants' Prior Trial Testimony and Pleadings as Admissions..." filed 7/30/08

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 ~ Fax (818)386-9289

1    The Copyright case was initiated by co-defendant John Stagliano, Inc. because the FBI

2    refused to investigate, or even take a crime report, related to the ongoing criminal importation of

3    the counterfeit Evil Angel® branded DVDs.  In explaining the FBI's refusal to open an

4    investigation, an agent confided that the works were adult oriented and the present administration

5    disfavored adult entertainment for political reasons, so no assistance would be forthcoming.

6        However, what the government cannot do through criminal process - eliminate adult

7    entertainment found offensive by some - it here tries to do through making creative adult-oriented

8    works unprotectable and financially worthless.

9        Artists who create adult oriented works have no reliable way to determine whether their

10   works may be found obscene in any particular jurisdiction when they are created. *F. X. Maltz,*

11   *Ltd. v. Morgenthau*, 556 F.2d 123 (1977)  However in an effort to avoid criminal prosecution,

12   many distributors chose not to ship works into jurisdictions that historically prosecute such

13   materials.[31]

14       In order to adequately protect their intellectual property, erotic artists <u>must</u> ship copies of

15   their works to the Library of Congress located in the District of Columbia as that is the only

16   statutorily available manner to obtain copyright registration.  (17 U.S.C. § 408.)  Artists seeking

17   to protect works intended to be distributed on-line must likewise provide copies of their works -

18   in this case the charged DVDs and/or entire web site - to the Library of Congress in order

19   to obtain federal copyright protection.  And copyright registration is a statutory <u>prerequisite</u> for

20   bringing a copyright action for works created in the United States. (17 U.S.C. § 411.)  The

21   address mandated for copyright registration deposit requirements is:  Library of Congress, U.S.

22   Copyright Office, 101 Independence Avenue SE, Washington, D.C. 20559.

23       There is no exemption for adult oriented works.  (See 37 C.F.R 202.19(c))

24       Allowing the government to prosecute works based on the community standards of the

25   District of Columbia would allow a D.C jury to be the final arbiter of what is appropriate for the

26

27

28   [31]  The Supreme Court has stated that if "a publisher wishes for its material to be judged only by the standards of particular communities, then it need only take the simple step of utilizing a medium that enables it to target the release of its material into those communities" *COPA 1* 535 U.S. at 583.

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1  rest of the country. Yet, "[p]eople in different States vary in their tastes and attitudes, and this

2  diversity is not to be strangled by the absolutism of imposed uniformity." *Miller, Id.,* at 33.

3

4                                              **VIII**

5   **DEFENDANT JOHN STAGLIANO IS ENTITLED TO A PUBLIC TRIAL UNDER**

6           **THE FIRST AND SIXTH AMENDMENTS TO THE UNITED STATES**

7                                         **CONSTITUTION**

8

9          In the event that a trial is held in this case, Defendant John Stagliano is entitled to an open

10  and public trial.[32]

11         The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the

12  accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI.  The Court

13  of Appeals has explained that this: (1) "ensure[s] that judge and prosecutor carry out their duties

14  responsibly," (2) "encourage witnesses to come forward" and (3) "discourages perjury." *United*

15  *States v. Perry*, 479 F. 3d 885, 889 (D.C. Cir. 2007), *quoting Waller v. Georgia,* 467 U.S. 39, 46

16  (1984).

17         Additionally, the "First Amendment guarantees the press and the public access to aspects

18  of court proceedings …'if such access has historically been available, and serves an important

19  function of monitoring prosecutorial or judicial misconduct.'" *United States* v. *El-Sayegh*, 131

20  F. 3d 158, 160 (D.C. Cir. 1997).  The Supreme Court "has also held that in the case of

21  proceedings that are traditionally open to the public and are enhanced by public access, such as

22  criminal trials, the public and press have a constitutional right to access unless the denial of

23  access is necessitated by an 'overriding' governmental interest and is narrowly tailored to save

24  that interest." *J B Pictures, Inc*. v. *Department of Defense*, 86 F. 3d 236, 239 (D.C. Cir. 1996).

25

26

27

28         [32]  At a conference prior to the arraignment proceedings, the Court indicated that it was inclined
to close the courtroom during the showing of the indicted works.  This portion of Defendant's Motion
is intended to address the Court's stated concerns.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 – Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1

## A.    The Sixth Amendment Guarantee of a Public Trial

2

3    "[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no

4    less protective of a public trial then the implicit First Amendment right of the press and public."

5    *Gannett Co*. v. *DePasquale*, 443 U.S. 368, 380 (1979).  As the *Waller* Court explained, "[t]he

6    central aim of a criminal proceeding must be to try the accused fairly, and '[o]ur cases have

7    uniformly recognized the public-trial guarantee as one created for the benefit of the defendant.'"

8    *Waller* v. *Georgia*, 467 U.S. at 46, quoting *Gannett*, supra, at 380.  The benefit of a public trial

9    is that "the public may see that [the accused] is fairly dealt with and not unjustly condemned, and

10    that the presence of interested spectators may keep his triers keenly alive to a sense of their

11    responsibility and to the importance of their functions…" *Gannett*, supra, at 380 (citations

12    omitted).

13        Here, this Court has, *sua sponte*, proposed closure of the courtroom during the playing of

14    the movies and motion-picture trailer that are the subject of the instant indictment.   John

15    Stagliano contends that such a closure would violate his Sixth Amendment public trial rights.

16        In the instant case, closure of the courtroom  constitutes exclusion of the very community

17    whose standards are being tested during the trial in relation to the indicted materials.  Under

18    *Waller*, therefore, the closing of a criminal proceeding is constitutional only if four factors are

19    met:

20        (1)    the party seeking closure establishes an overriding interest that is likely to

21        be prejudiced;

22        (2)    the closure ordered by the court is no broader than necessary to protect the

23        asserted overriding interest;

24        (3)    the trial court must consider adequate alternatives to closing the courtroom

25        during trial; and

26        (4)    the court must make findings that adequately support closure of the

27        courtroom.

28    See, *United States* v. *Perry*, supra, at 889.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 • Fax (818)386-9289

As previously indicated, the Court *sua sponte* raised the issue of a closed courtroom. The government has not moved for a closed courtroom. No overriding interest more important that the defendant's Sixth Amendment rights has been advanced to justify closure of the courtroom during the playing of the indicted works. John Stagliano submits that there cannot be an interest that overrides his right to a public trial when the community's acceptance of his presumptively protected expression is the central issue of the case. The irony of excluding the community from its opportunity to see exactly what it allegedly will not tolerate cannot be escaped. In fact, no other case more strongly required enforcement of the Sixth Amendment public trial guarantee than one where the trial process is intended to, ultimately, determine what the community thinks.

Moreover, there are adequate alternatives to closing the courtroom during the playing of the charged materials. Certainly, the court should limit the courtroom to adults while the movies are being played. In order to promote an orderly environment and due respect for the solemnity of the trial proceedings (both of which are understandable concerns, but neither of which overrides defendant's right to a public trial), the court could order that no one may enter or leave the courtroom during the playing of the movies and motion-picture trailer charged in the indictment. Whatever the Court's concern, this simply is not one of those rare situations where closure of the courtroom is justified, and defendant's right to a public trial as guaranteed by the Sixth Amendment must be honored in this circumstance.

**B.    The First Amendment Guarantee of a Public Trial**

Since 1791, the essential purpose of the free press clause of the First Amendment has been to ensure that the workings of government remain exposed to the people. The "free discussion of governmental affairs" intended by the First Amendment, *Mills* v. *Alabama*, 384 U.S. 214, 218 (1966), requires public access to information concerning the operation of the government. The function of providing this information to the citizenry is left specifically to the press: "The press was protected so that it could bare the secrets of government and inform the people. Only a free and unrestrained press can effectively expose deception in government." *New York Times Co.* v. *United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring).

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 • Fax (818)386-9289

Accordingly, the Supreme Court has found that the press and the public have a qualified First Amendment right to attend a criminal trial. *See*, *Globe Newspaper Co.* v. *Superior Court for Norfolk County*, 457 U.S. 596 (1982); *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555 (1980). As the Supreme Court explained in *Waller*:

> In each of these cases the Court has made clear that the right to an open trial may give way in certain cases to other rights or interest, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care. We stated the applicable rules in *Press – Enterprise*:
>
> "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. *Waller v. Georgia*, supra, at 45, quoting *Press, Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) (emphasis added).

John Stagliano respectfully objects to any closure of his trial. The trial process is presumed to be open for both the public and the press, and no other interest asserted here overrides defendants' First Amendment trial access rights to such an extent that the presumption of openness can been overcome. In fact, not closing this trial promotes the higher values referred to in *Press Enterprise*, supra, by ensuring that members of the community of the District of Columbia are free to attend the entire trial and understand precisely how community values are being determined and to what speech said values are being applied in the course of deciding whether the charged expression may be lawfully be disseminated within the community. Closing the courtroom during the playing of the charged works will inhibit, without sufficient justification, the public's right to know exactly how its laws are being enforced – especially when it comes to what they are allowed to see and hear in their community.

Further, closing the trial during the playing of the indicted works sends a message to the jury and those interested in attending the trial that there is something "wrong" with the indicted works. This would prejudice the jury and deprive Defendants of a fair trial.

Finally, Local Criminal Rule 17.2(a) states that all criminal proceedings shall be held in open court and shall be available for attendance and observation by the public unless otherwise provided by law or rule. No such law or rule applies here.

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

1    Accordingly, John Stagliano respectfully moves that this Court grant him the full open

2    trial to which he is entitled under the First and Sixth Amendments to the United States

3    Constitution.

4

5                                    **IX**

6                **MOTION TO JOIN OTHER DEFENSE MOTIONS**

7

8    It is anticipated that Defendant John Stagliano's co-Defendants have filed or will file

9    several additional pre-trial motions that will be applicable to Defendant John Stagliano.  It would

10   be duplicitous to reproduce each and every pre-trial motion which may be applicable to a

11   particular Defendant.  Therefore, John Stagliano hereby moves the Court to permit him to adopt

12   all pre-trial motions of co-Defendants which may be applicable to John Stagliano.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ALLAN B. GELBARD, ESQ.**
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

## X

## CONCLUSION

As Justice Douglass wrote in his dissent in <u>Miller</u>:

"Obscenity--which even we cannot define with precision--is a hodge-podge.  To send men to jail for violating standards they cannot understand, construe, and apply is a monstrous thing to do in a Nation dedicated to fair trials and due process."

Yet that is precisely what the government wishes to do here; to send John Stagliano to jail for providing sexually explicit works - featuring consenting adult actors engaged in constitutionally protected expressive conduct - to willing adult recipients for their enjoyment in the privacy of their own homes which is their constitutionally protected right.

The foolishness of this situation is exposed by applying the same logic to the sale of contraceptives.  The "right" to use contraceptives recognized in *Griswold* would be meaningless if the government could prosecute anyone who offered them.  Yet the right to view sexually explicit - even obscene - videos <u>in the privacy of one's home</u> is no less protected than the right to use contraception *Griswold, Carey* or a vibrator *Reliable Consultants*.

Further, it is without rational dispute that being subjected to "community standards" test of what one wishes to view in the privacy of one's home would violate the clearly established constitutional right <u>to be let alone</u>. The government attempts to <u>circumvent</u> the constitutionally protected right of adults to privately view these materials by sending <u>the producer</u> to jail for providing them.

The government's true interest in stemming the distribution of sexually explicit materials to consenting adults, <u>is and always has been</u>, the imposition of majoritarian morality.  It does so under the full weight of the criminal justice system.  This paternalistic imposition of Judeo-Christian sexual morality is not a legitimate basis to criminalize John Stagliano's exercise of his rights of free expression under the First Amendment, nor to deprive him, or his clients, rights guaranteed under the Fifth and Fourteenth Amendment guarantees of Substantive Due Process.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 - Fax (818)386-9289

1    "It is a promise of the Constitution that there is a realm of personal liberty which the

2    government may not enter." *Lawrence*, at 578.  This is such a realm.

3    These charges must be dismissed and the federal obscenity statutes - at least to the extent

4    to which they apply to the sending of materials to consenting adult viewers for private

5    consumption - must be declared unconstitutional.

6

7    Respectfully submitted this 31st day of July, 2008.

8

9                                          s/Allan B. Gelbard, Esq./

10                                         Allan B. Gelbard, Esq.
                                           THE LAW OFFICES OF ALLAN B. GELBARD
11                                         15760 Ventura Blvd., Suite 801
                                           Encino, CA 91436
12                                         Tel: (818)386-9200
                                           Fax: (818)386-9289
13                                         Pro Hac Vice - CA Bar # 184971
                                           Attorney for Defendant John Stagliano
14

15                                         s/ Robert Corn-Revere/

16                                         Robert Corn-Revere
                                           Davis Wright Tremaine LLP
17                                         1919 Pennsylvania Avenue NW Suite 200
                                           Washington, DC 20006
18                                         Tel: (202) 973-4200
                                           Fax: (202) 973-4499
                                           D.C. Bar # 375415
19                                         Local Counsel for Defendant John Stagliano

20

21

22

23

24

25

26

27

28

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 ~ Fax (818)386-9289

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)

# DECLARATION OF ALLAN B. GELBARD, ESQ.

I, Allan B. Gelbard declare:

1. I am an attorney, licensed by the state of California and admitted to practice in the United States District Court for the Districts of Northern, Southern and Central California, the Ninth Circuit Cour of Appeals, and the United States Supreme Court. I have been admitted Pro Hac Vice in this matter. The facts stated herein are based upon my own personal knowledge, and if called upon to testify, I could and would competently testify thereto.

2. Attached hereto as Exhibit 1 is a true and correct copy of the home-page of the Evil Angel Internet website located at www.evilangel.com.

3. Attached hereto as Exhibit 2 is a true and correct copy of a document produced by the government in this case, identified as an FD-302 dated 1/22/08 which purports to be the investigate record of Special Agent Bradley's accessing of the Evil Angel Internet website from which he "selected the trailer BELLADONNA'S FETISH FANATIC 5 for download."

4. Attached hereto as Exhibit 3 is a true and correct copy of document produced by the government in this case which is a report, purportedly prepared by Special Agent Bradley, which establishes that the government was aware of the civil copyright and trademark action between Defendant John Stagliano, Inc. and Kaytel Video Distribution.

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct, and that this declaration was executed this 31st day of July, 2008 at Encino, California.

s/Allan B. Gelbard, Esq./
Allan B. Gelbard, Esq.

ALLAN B. GELBARD, ESQ.
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 – Fax (818)386-9289

1

2 **CERTIFICATE OF SERVICE**

3      I hereby certify that an exact copy of the foregoing document was provided via the Court's

4 electronic filing notification system upon Pamela Satterfield, U.S. Department of Justice, on the 31st day

5 of July, 2008.

6
                        s/Allan B. Gelbard, Esq./

7                         Allan B. Gelbard, Esq.
THE LAW OFFICES OF ALLAN B. GELBARD

8 15760 Ventura Blvd., Suite 801
Encino, CA 91436

9 Tel: (818)386-9200
Fax: (818)386-9289

10 Pro Hac Vice - CA Bar # 184971
Attorney for Defendant John Stagliano

11

12                         s/ Robert Corn-Revere/

13                         Robert Corn-Revere
Davis Wright Tremaine LLP

14 1919 Pennsylvania Avenue NW Suite 200
Washington, DC 20006

15 Tel: (202) 973-4200
Fax: (202) 973-4499

16 D.C. Bar # 375415
Local Counsel for Defendant John Stagliano

17

18

19

20

21

22

23

24

25

26

27

28

United States v. Stagliano, et al
Motion to Dismiss (John Stagliano)



A Message From the President



Evil Angel, or "The Evil Empire" is a company owned by me, John Stagliano, that is organized in a completely different way than any other video porno company. I sell my videos, and I also sell the videos of several other directors. We are different in that I do not own the videos of these other directors. I only sell their videos and keep a percentage of the gross sales as a fee for my services. I started this arrangement because of my experience selling videos to other porno companies. They would buy my videos and own them themselves. I found that it was very difficult to build my reputation with the public this way, and also, I did not get any more money if I did a video that sold exceptionally well.

At Evil Angel I wanted to create a situation where the directors could be rewarded for the hard work they put into creating their product. Here the directors make more money if their videos sell more. This is a great incentive for them to find new and better ways to make videos. All indications are that this system works very well. The DVD's that we make are the best-selling in the business. Each one of our directors is unique in style and content, but similar in their commitment to create the best product possible.

Enjoy,
John "*Buttman*" Stagliano

WARNING! ADULTS ONLY!

Ahead lay visual images, audio sounds, and verbal descriptions of a sexually oriented and frankly erotic nature. This site was designed to be used and viewed solely by people who are at least 18 years of age, or who are otherwise legally considered to be of adult age depending on the community in which they live, who wish to access materials that are visually graphic in nature including portrayals of nudity and sexual acts. If you are not legally considered to be of adult age as determined by the community in which you live, or find such material offensive in nature, or simply do not wish to be exposed to such material YOU MUST LEAVE NOW BY CLICKING HERE.

By entering this website, you agree that you have read, understand, and agree to the Terms and Conditions of Use, and agree expressly to be bound by them. If you do not agree to any part of the Terms and Conditions of Use, YOU MUST LEAVE NOW BY CLICKING HERE.

**By clicking on "Enter" below or otherwise entering or viewing this website, I certify that I agree to each of the terms described above, and also that each of the conditions described are true.**

**I wish to LEAVE this website and/or I am UNDER 18 years of age and/or the above conditions are NOT true and/or I DO NOT agree to the terms described. I understand that I may leave this website now by clicking on the word "Exit" below, or by clicking on the "Back" button of my browser, or by restarting my**

Exhibit 1 (1 of 2)
Page 34

**computer.**

 



Anal Acrobats | Anal Centerfolds | Ass Corruption | Ass Fetish Zone | Big Butt Hos | Big Dicks Round Ass | Black Pipe Layers | Buttman |

Christophs Big Natural Tits | Cock Choking Sluts | Cock Jugglers | Euro Angels | Face Fucking Inc. | Gang Bang Playground | Gaping Angels | Lesbian Fanatics |

POV Blow Jobs | Rogue Adventures | She Plays With Her Cock | Storm Squirters | Strap Attackers | Ass Jazz Duro | Christoph Clark Online | Jake Malone Online |

Jay Sin XXX | Joey Silveras World | John Leslie XXX | Jonni Darkko XXX | Justin Slayer Video | Manuel Ferrara XXX | Nacho Vidal Hardcore | Belladonna DVD |

Christoph Clark DVD | Evil On Demand | Jake Malone DVD | Jay Sin DVD | Jazz Duro XXX | Joey Silvera DVD | John Leslie DVD | John Stagliano DVD |

Jonni Darkko DVD | Justin Slayer DVD | Manuel Ferrara DVD | Nacho Vidal DVD | Rocco Siffredi DVD | Evil Angel Live | Evil Angel Direct |

2257 Info:

EvilAngel.com Copyright © 1999 - 2005 John Stagliano, Inc. dba E.A. Productions. All Rights Reserved Worldwide.
Date of production: August 31, 2001. EVIL ANGEL® and BUTTMAN® are federally registered trademarks of John Stagliano, Inc., dba

The following statement is made in compliance with the provisions of 18USC and 28 CFR 75:
Records required by 18USC, and 28 CFR 75 are maintained by John Stagliano, Custodian of Records, 14141 Covello Street 8C, Van Nuys, CA 91405.

Exhibit 1 (2 of 2)

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    01/22/2008

On 01/21/2008, SA Daniel M. Bradley conducted the following investigation in Washington DC:

SA Bradley while acting in an undercover capacity in the vicinity of 14th Street NW, Washington DC, accessed www.evilangel.com from a wireless network.  SA Bradley accessed www.evilangel.com in an area open to others, and subsequently selected the trailer BELLADONNA'S FETISH FANATIC 5 for download.

SA Bradley utilized software to record the accessing and successful download of www.evilangel.com and BELLADONNA'S FETISH FANATIC 5.

The downloaded content will be retained as evidence.



Investigation on    01/21/2008    at  Washington DC

File #  145B-WF-235725                                        Date dictated  01/22/2008

by    SA Daniel M. Bradley

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

Exhibit 2
Page 36

(Rev. 06-04-2007)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE            **Date:** 12/03/2007

**To:** Washington Field

**From:** Washington Field
        CR-18/NVRA
          **Contact:** SA Daniel M. Bradley, (703) 762-3263

**Approved By:** Morrow Melissa

**Drafted By:** Bradley Daniel M:dmb

**Case ID #:** 145B-WF-235725    (Pending) -25

**Title:** JOHN STAGLIANO;
        EVIL ANGEL PRODUCTIONS, aka
        THE EVIL EMPIRE;
        ADULT OBSCENITY INITIATIVE;
        ITOM-NON-LCN

**Synopsis:** To document deconfliction checks completed by writer after discovery of civil judgement in favor of the above captioned subject.

**Details:** On 11/29/2007, writer received information that the above captioned subject was awarded a multi-million dollar judgement by the United States 9th District Court of California. Open source information indicated that John STAGLIANO took KAYTEL DISTRIBUTION of Canada to trial for violation of Intellectual Property Rights. The 9th District ruled in favor of STAGLIANO and multiple open source articles suggest that this case was not handled privately but was investigated by "United States and Canadian authorities". SA Bradley conducted updated ACS checks for the above captioned subject with negative results. SA Bradley also contacted Immigration and Customs Enforcement (ICE) Agent Thomas Eyre who conducted multiple database checks for the above captioned subject and KAYTEL DISTRIBUTION, with negative results. At this time it is believed that EVIL ANGEL PRODUCTIONS conducted a private investigation of KAYTEL DISTRIBUTION's infringement activities.

♦♦



Exhibit 3
Page 37

03db01.wpd

ALLAN B. GELBARD, ESQ.
THE LAW OFFICES OF ALLAN B. GELBARD
15760 Ventura Boulevard, Suite 801
Encino, CA 91436
Tel:(818)386-9200
Fax:(818)386-9289
Bar # 184971

Attorney for Defendant
John Stagliano

# UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF COLUMBIA

United States of America,

          Plaintiff,

vs.

JOHN STAGLIANO, JOHN
STAGLIANO, INC., and EVIL ANGEL
PRODUCTIONS, INC.,

          Defendants

**CASE NO: Criminal 08-093 RJL**

[PROPOSED]

**ORDER DISMISSING INDICTMENT**

    Good cause having been found, the Court hereby DISMISSES the indictment

against Defendant John Stagliano in the above entitled matter.

    The Clerk is Ordered to provide notice of this order to:

Pamela Satterfield
United States Department of Justice
1301 New York Ave., Suite 560
Washington, DC 20530
Fax:(202)514-1793

Allan B. Gelbard, Esq.
Law Offices of Allan B. Gelbard
15760 Ventura Blvd., Suite 801
Encino, CA 91436
Fax: (818)386-9289
Attorney for Defendant John Stagliano

Paul J. Cambria, Jr.
Roger W. Wilcox, Jr.
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue
Buffalo, New York 14202
Fax: (716) 855-1580
Attorneys for Defendant E.A. Productions, Inc.

H. Louis Sirkin
Jennifer M. Kinsley
Sirkin Pinales & Schwartz LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Fax: (513) 721-0876
Attorneys for Defendant John Stagliano, Inc.

-1-

United States v. Stagliano, et al.
Order Dismissing Indictment

Robert Corn-Revere
Davis Wright Tremaine LLP
1500 K Street, NW, Suite 450
Washington, D.C. 20005
Fax:  (202) 508-6699
Local Counsel for Defendants


Dated_____                    _____
                                         Hr. Richard J. Leon,
                                         United States District Court Judge.

ALLAN B. GELBARD, ESQ.,
15760 Ventura Boulevard, Suite 801 Encino, CA 91436
Tel (818)386-9200 – Fax (818)386-9289

United States v. Stagliano, et al.
Order Dismissing Indictment